the Education Code to determine compliance with our decision in *Leeper*.

Even construed in the light most favorable to the McIntyres, the petition as a whole clearly reflects that the core issue in this case is whether a school district, in carrying out its duties under section 11.002, can demand homeschool verification and bring charges for violation of the Education Code if the parent fails to provide such verification. *See* TEX. EDUC. CODE § 11.002. In fact, in their brief to this Court, the McIntyres state that the issue presented in the case is "the District's legal authority to demand use of a particular curriculum." The McIntyres, in their pleadings to the trial court, have twice declared that "the object [of the case] has been, and is, a declaration ... [and] injunction, to *interpret/enforce state law* as applied to [EPISD's] policy/custom of dealing with home educated students and/or how [the McIntyres] were dealt with."

As this Court has stated time and time again, the purpose of the requirement to exhaust administrative remedies is to ensure that " 'the appropriate body adjudicates the dispute' first." *Clint ISD*, 487 S.W.3d at 544 (quoting *Essenburg v. Dall. Cty.*, 988 S.W.2d 188, 189 (Tex.1998) (per curiam)). The McIntyres should not be allowed to avoid the exhaustion requirement by alleging "constitutional misdeeds." *Jones*, 46 S.W.3d at 474 (noting that allowing avoidance of the exhaustion requirement "by the simple allegation of constitutional misdeeds" would "likely corrupt the entire process"). However, that is exactly what the Court is allowing the McIntyres to do here. I cannot agree and, therefore, cannot join the Court.

It is clear that the McIntyres' claims arise out of their alleged injury caused by EPISD's direct application of the school laws or by EPISD's alleged violation of the school laws. The school district and the Commissioner of Education are better situated than the court to resolve the McIntyres' grievances. After exhausting administrative remedies, the McIntyres would then have the opportunity to "file suit and have the courts review the agency's decision." *Clint ISD*, 487 S.W.3d at 544. The McIntyres are persons "aggrieved by ... the school laws of this state" or a school board's actions that violate the school laws of the state under section 7.057(a) and must, therefore, exhaust administrative remedies. TEX. EDUC. CODE § 7.057(a).

### III. Conclusion

The Court holds that a party can circumvent the Legislature's exhaustion-of-administrative-remedies requirement through creative pleading. Because the Court's interpretation of section 7.057(a)(1) effectively nullifies that provision, contrary to the intent of the Legislature, and because the Court ignores the true nature of the McIntyres' claims, I respectfully dissent.

Eric Dwayne **STEVENSON**, Appellant

v.

The **STATE** of Texas

NO. PD-0122-15

Court of Criminal Appeals of Texas.

DELIVERED: September 21, 2016

R. Scott Walker, Fort Worth, for Appellant.

Steven W. Conder, Assistant District Attorney, Fort Worth, Lisa C. McMinn, State's Attorney, Austin, for the State.

## OPINION

KEASLER, J., delivered the unanimous opinion of the Court.

A jury convicted Eric Stevenson of three counts of violating a sexually violent predator civil-commitment order. On appeal, Stevenson argued that the trial court lacked jurisdiction; the judge erred in denying his motion to quash, motion for directed verdict, and requests to admit certain evidence; and that double jeopardy barred his multiple convictions. The Second Court of Appeals upheld all three convictions and summarily denied his remaining claims. We agree with the court of appeals' conclusions, except for its resolution of Stevenson's double-jeopardy claim. We hold that the multiple punishments imposed violated Stevenson's double-jeopardy rights, and we vacate the judgments stemming from the indictment's first and third counts.

### I. Background

### A. Texas's Civil-Commitment Scheme

To contextualize the factual background in this case, it is necessary to set out the legal backdrop for civilly committing sexually violent predators in Texas. As explained below, the process is a hybrid combining civil rules and procedures with elements and components of criminal law. The Legislature established a civil-commitment procedure providing long-term supervision and treatment for sexually violent predators because these predators have behavioral abnormalities increasing their likelihood of recidivism and these abnormalities are not amenable to traditional mental-health treatment.[1]

---

1. TEX. HEALTH & SAFETY CODE ANN. § 841.001 (West 2010).

The statute defines a sexually violent predator as a person who is "(1) a repeat sexually violent offender; and (2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence."[2] Health and Safety Code § 841.003(b) defines a "repeat sexually violent offender" as a person who has been convicted of more than one sexually violent offense and has a sentence imposed for a sexually violent offense as defined in the statute.[3] Section 841.003(b) also states that a person meets this definition even if the person enters a guilty or nolo contendere plea or is adjudicated as a juvenile for a sexually violent offense.[4] For the purposes of the instant case, Stevenson's convictions for burglary of a habitation with the intent to commit sexual assault and sexual assault of a child under 17 years of age are sexually violent offenses.[5]

The Special Prosecuting Unit, a civil division wholly separate from the criminal division of the special prosecution unit, is responsible for commencing and seeking the civil-commitment proceeding.[6] The unit may file a "petition alleging that the person is a sexually violent predator and stating facts sufficient to support the allegation."[7] Within 270 days of the petition's service, a civil trial is required to determine whether the person is a sexually violent predator.[8] While the number of jurors and voir dire are subject to the Code of Criminal Procedure, the trial "is subject to the rules of procedure and appeal for civil cases. To the extent of any conflict between this chapter and the rules of procedure and appeal for civil cases, this chapter controls."[9] At the close of trial, either a judge or a unanimous jury must determine, beyond a reasonable doubt, that the person is a sexually violent predator.[10]

Once a judge or jury determines the person is a sexually violent predator, the judge must impose a civil-commitment order and commit the person to outpatient treatment and supervision.[11] Once entered, the civil-commitment order is effective immediately "except that the outpatient treatment and supervision begins on the person's release from a secure correctional facility . . . ."[12] The order stays in effect until the person's behavior abnormality changes so significantly that the person is no longer likely to commit "a predatory act of sexual violence."[13]

Even before entering the civil-commitment order, the judge is required to impose requirements to ensure the person's compliance with treatment and supervision.[14] These requirements (1) mandate that the person reside in a Texas residen-

2. *Id.* § 841.003(a).

3. *Id.* § 841.003(b).

4. *Id.*

5. *Id.* § 841.002(8)(A), (C).

6. *Id.* § 841.004 (repealed 2015) (applying in the instant case). *Cf.* Tex. Health & Safety Code Ann. § 841.002(1) (West 2015) (defining attorney representing the state as "a district attorney, criminal district attorney, or county attorney with felony criminal jurisdiction who represents the state in a civil-commitment proceeding under this chapter).

7. Tex. Health & Safety Code Ann. § 841.041(a) (West 2010).

8. *Id.* § 841.061(a).

9. *Id.* § 841.146(a)–(b).

10. *Id.* § 841.062.

11. *Id.* § 841.081(a).

12. *Id.*

13. *Id.*

14. *Id.* § 841.082.

tial facility under contract by or approved by the Council on Sex Offender Treatment, the agency responsible for providing sexually violent predators with treatment and supervision; (2) prohibit the person from contacting the victim or a potential victim; (3) prohibit any alcohol or drug possession or use; (4) order the person to participate in and comply with a specific course of treatment; (5) subject the person to GPS tracking and prohibit any tampering, altering, modifying, obstructing, or manipulating with the tracking device; (6) prohibit the person's change of address and out-of-state travel without the judge's prior approval; (7) establish a child-safety zone if the judge determines it is appropriate; (8) compel the person to notify, within twenty-four hours, a case manager of any physical health or job status changes that may affect their treatment and supervision; and (9) authorize any other requirements the judge deems necessary.[15] A person who fails to comply with requirements under § 841.082 commits a third-degree felony.[16]

## B. Factual Background

With this legal framework in mind, we now turn to the facts in this case. In 2011, a jury determined Stevenson was a sexually violent predator as defined by § 841.003. Because the jury determined Stevenson was a sexually violent predator, the judge rendered a final judgment and ordered civil commitment for treatment and supervision pursuant to § 841.081 following his release from confinement. The civil-commitment order required Steven-

son to live at a designated facility; participate in and comply with the provided treatment; submit to GPS tracking and monitoring and not tamper with the GPS device; obtain permission to leave his residence; and not have any contact with family or friends unless approved by a case manager or treatment provider. After the judge denied Stevenson's motion for new trial, Stevenson appealed the judgment.[17]

While the appeal was pending, Stevenson violated the civil-commitment order.[18] The State charged him with three counts of violating the civil-commitment order and alleged that he (1) went to his girlfriend's house without approval, (2) removed the GPS device and left the designated facility without permission, and (3) failed to make progress in the treatment program. Stevenson moved to quash the indictment pretrial, alleging the civil-commitment order was not a final or enforceable order because of his pending appeal. The judge denied the motion. Before the case went to the jury, Stevenson also moved for a directed verdict, which the judge denied. The jury found him guilty on all three counts of violating the civil-commitment order. At the punishment phase, the jury found the repeat-offender allegation true and assessed punishment at seventeen years' confinement and a $5,000 fine on each count. Five weeks after the jury convicted Stevenson, the court of appeals' mandate issued which affirmed the civil trial court's judgment on the sexually violent predator determination and resulting

---

15. *Id.* § 841.082(a). *Cf.* TEX. HEALTH & SAFETY CODE ANN. §§ 841.082(a), 841.085(a) (West 2015) (amending the statute by eliminating a number of requirements and bases for criminal prosecution).

16. TEX. HEALTH & SAFETY CODE ANN. § 841.085(a)–(b) (West 2010).

17. *In re Commitment of Stevenson*, No. 09–11–00601–CV, 2013 WL 5302591, at *1 (Tex. App.–Beaumont Sept. 19, 2013, no pet.) (not designated for publication).

18. *Stevenson v. State*, No. 02–13–00537–CR, 2015 WL 221816, at *1–2 (Tex.App.–Fort Worth Jan. 15, 2015) (not designated for publication).

civil-commitment order.[19]

On appeal, Stevenson argued the trial court lacked jurisdiction because the civil-commitment order and sexually violent predator determination was on appeal, and therefore was not a final order from which criminal charges could stem. The court of appeals determined that the court had jurisdiction because there is no finality requirement for criminalizing violations of the civil-commitment order.[20] Additionally, the court of appeals reasoned that, according to Health and Safety Code § 841.081(a), a civil-commitment order is effective immediately and does not turn on whether a final judgment was entered.[21] The court of appeals rejected Stevenson's argument that the State violated his double-jeopardy rights when the jury sentenced him on all three counts of violating the civil-commitment order.[22] We granted Stevenson's petition for discretionary review to review the court of appeals' analyses.

## II. Analysis

### A. Trial Court's Jurisdiction

Stevenson again argues that the trial court inappropriately exercised jurisdiction over the civil-commitment order violation predicated on a non-final judgment, an essential element for the offense. As we understand Stevenson's argument, Stevenson invites this Court to read a finality re-quirement into Health and Safety Code § 841.085 in the same manner as in *Tamez v. State*[23] and the Rule of Appellate Procedure 25.2(g).[24] However, *Tamez* is unavailing because using prior convictions as an enhancement to access felony court jurisdiction is not analogous to requiring a final adjudication before initiating criminal proceedings on a civil-commitment order violation. As explained below, Rule 25.2(g) is inapplicable in this case based on the rule's plain language.

In *Tamez*, we held that if the State uses prior convictions to elevate a misdemeanor to a felony DWI offense, the State must plead them in the indictment for the trial court to gain jurisdiction over the matter.[25] This is an important distinction because two different courts—the county and district courts—exercise jurisdiction over misdemeanor and felony matters, respectively. But this is not the case in civil-commitment order violations. Unlike Texas Penal Code § 49.09(b), that defines an elevated offense category, Health and Safety Code § 841.085 does not provide for enhancement based on prior conduct or convictions, so it does not impose a jurisdictional element. Section 841.085 provides, "[a] person commits an offense if, after having been adjudicated and civilly committed as a sexually violent predator under this chapter, the person violates a civil-commitment requirement imposed under

19. *In re Commitment of Stevenson*, 2013 WL 5302591, at *1.

20. *Stevenson*, 2015 WL 221816, at *1–2.

21. *Id.* (citing Tex. Health & Safety Code Ann. § 841.081(a) (West 2010)).

22. *Id.*

23. 980 S.W.2d 845, 847 (Tex.App.–San Antonio 1998), *rev'd on other grounds*, 11 S.W.3d 198 (Tex.Crim.App.2000).

24. Tex. R. App. P. 25.2(g) ("Once the record has been filed in appellate court, all further proceedings in the trial court—except as provided otherwise by law or by these rules—will be suspended until the trial court receives the appellate-court mandate.").

25. 11 S.W.3d at 201 (discussing Texas Penal Code § 49.09(b)).

Section 841.082."[26] The statute does not require any additional or other specific pleadings to invoke the district court's jurisdiction because the statute classifies the offense as a third-degree felony and, therefore falls under the district court's jurisdiction.[27] Thus, the State is not required to plead any additional elements to invoke the district court's jurisdiction.

Stevenson also directs us to Rule of Appellate Procedure 25.2(g) providing that "[o]nce the record has been filed in the appellate court, all further proceedings in the trial court—except as provided otherwise by law or by these rules—will be suspended until the trial court receives the appellate-court mandate."[28] Stevenson fails to demonstrate how Rule 25.2(g), titled "Criminal Cases," applies to an appeal on a civil-commitment order. And while Health and Safety Code § 841.146(b) provides, "a civil commitment proceeding is subject to the rules of procedure and appeal for civil cases[,]"[29] the statute goes on to explain that "[t]o the extent of any conflict between this chapter and the rules of procedure and appeal for civil cases, this chapter controls."[30] Also, § 841.081 explicitly states that the civil-commitment order takes effect immediately upon its entry.[31] Given the Legislature's manifest intent through this statute's unambiguous language, any hypothetical conflict between the rules of appellate procedure and § 841.081(a) is decisively resolved by § 841.146(b)'s clear directive. Stevenson asks this Court, in effect, to stay any enforcement of a civil-commitment order until the order is affirmed or reversed on appeal. Such a reading would have us circumvent the Legislature's clear intent, which we cannot and will not do.[32] Thus, Stevenson's jurisdictional argument fails.

## B. Legal Sufficiency

Stevenson also argues that the evidence is insufficient to support his convictions. He argues the judge erred in denying his motion for directed verdict because the State did not prove that there was a final commitment order.[33] Stevenson invokes his jurisdictional argument here, but for the same reasons as above, we dismiss that argument. He also directs us to *Jordan v. State*[34] and asks this Court to read a finality requirement into the statute as we did with the community-supervision statute. But he asks for too much. Not only does *Jordan* not apply, but the Legislature's intent directly contradicts his position.

In *Jordan*, we discussed Code of Criminal Procedure Article 42.12, § 15's finality requirement in prior criminal convictions.[35] There, we held that a prior felony convic-

---

**26.** Tex. Health & Safety Code Ann. § 841.085(a) (West 2010).

**27.** *Id.* § 845.085(b). *See* Tex. Code Crim. Proc. art. 4.05 (granting district courts with jurisdiction over felony cases).

**28.** Tex. R. App. P. 25.2(g).

**29.** Tex. Health & Safety Code Ann. § 841.146(a) (West 2010).

**30.** *Id.* § 841.146(b).

**31.** *Id.* § 841.081(a).

**32.** *See Boykin v. State,* 818 S.W.2d 782, 785 (Tex.Crim.App.1991) (explaining we discern the Legislature's intent by the statute's literal text and the text's plain meaning).

**33.** *See McDuff v. State,* 939 S.W.2d 607, 613 (Tex.Crim.App.1997) (explaining that a motion for directed verdict is actually an attack on whether the evidence was sufficient to support the conviction).

**34.** 36 S.W.3d 871 (Tex.Crim.App.2001).

**35.** *Id.* at 872 (providing when community supervision may or may not be imposed).

tion must be final to enhance the punishment in a subsequent prosecution.[36] While the statute did not expressly require finality, we found a finality requirement in § 15 because without it, trial judges would have to predict an appellate court's decision in a pending case or risk judgments being overturned for events that occur while the case is pending.[37] To reach this holding, we defined "final" in a manner consistent with the general principle that a conviction with a pending appeal is not final until the appellate court affirms the conviction and issues its mandate.[38] Applying this principle, we explained that a pending appeal on a conviction must be resolved for a probated sentence to be a final conviction for enhancement purposes. [39] When there is no pending appeal from the conviction, but there is an appeal only from a probation revocation, the conviction can be used as an enhancement.[40] A deferred adjudication, however, becomes final only when guilt is adjudicated.[41] We, therefore, held Jordan's community-supervision revocation was not final and could not be used to deny him community supervision in a subsequent prosecution.[42] However, this logic does not apply to civil-commitment order violations simply because the statute requires an "adjudication," not a "conviction."

■ We need only rely on the statute's literal text to determine that the State does not have to show a final adjudica-

tion.[43] It is true that "criminal statutes outside the penal code must be construed strictly, with any doubt resolved in favor of the accused."[44] But " 'strict construction' does not mean that we ignore the plain meaning of the statutory language."[45] Applying the statute's terms' ordinary everyday meaning, "adjudicate" means to "rule on judicially."[46]

Here, "adjudicated" means that a judge orders that the person be civilly committed. The elements of criminal non-compliance provide that a person commits an offense if a judicial ruling has been made as to whether the person is a sexually violent predator, the person has been civilly committed as a sexually violent predator, and the person violates any of § 841.082(a)'s requirements.[47] Once the fact finder finds these elements beyond a reasonable doubt, an order must be entered. According to § 841.081(a)'s plain language, it is given immediate effect,[48] and thus precludes us from imposing a *Jordan*-like finality requirement.

■ At trial, the State admitted a copy of the judgment finding Stevenson a sexually violent predator, a copy of the civil-commitment order requirements, and evidence that Stevenson violated the requirements. The State demonstrated, and the jury concluded, that Stevenson contacted family members, casual relations, and

36. *Id.*

37. *Id.*

38. *Id.* at 875.

39. *Id.* at 876.

40. *Id.* at 875.

41. *Id.* at 876.

42. *Id.* at 877.

43. *See Boykin,* 818 S.W.2d at 785 (explaining we discern the Legislature's intent by the statute's literal text and the text's plain meaning).

44. *State v. Johnson,* 219 S.W.3d 386, 388 (Tex.Crim.App.2007).

45. *Id.*

46. Black's Law Dictionary 50 (10th ed. 2014).

47. Tex. Health & Safety Code Ann. § 841.082(a) (West 2010).

48. *Id.* § 841.081(a).

friends without a program specialist's approval; tampered with and removed his GPS monitoring device; and failed to make progress in treatment and was unsuccessfully discharged from the outpatient-treatment program. We hold that this was sufficient evidence for a rational jury to conclude beyond a reasonable doubt that Stevenson violated the civil-commitment order.

## C. Double Jeopardy

 Stevenson also argues that his three convictions are the same offense for double jeopardy purposes and imposing multiple punishments violated his double-jeopardy rights. The Fifth Amendment's Double Jeopardy Clause prohibits a second trial after the accused has already been convicted or acquitted of that crime and forbids multiple punishments for the same offense in a single prosecution.[49] In a multiple-punishments case, like the one here, the double-jeopardy analysis hinges on whether the Legislature intended multiple punishments.[50] We define "same offenses" in a double-jeopardy analysis, by examining the legislative intent and determining the number of punishable offenses the Legislature contemplated.[51] When there are two separate statutory provisions, the

analysis requires both an elements analysis under *Blockburger v. United States* and a units analysis.[52] Whereas, if the charged offenses are codified in a single statutory provision, we conduct only a units-of-prosecution analysis because the elements tests is necessarily resolved in the defendant's favor.[53] A units analysis considers what the allowable unit of prosecution is, based on the statute's construction and ascertaining the gravamen of the offense, and how many units have been shown by examining the evidence presented at trial.[54] Double jeopardy is not violated if the Legislature intended the offenses to constitute "separate allowable units of prosecution."[55]

To determine the allowable units of prosecution, we first look to the gravamen of the offense. The gravamen of the offense can be the result of conduct, the nature of conduct, or the circumstances surrounding the conduct.[56] If the offense is a result-of-conduct crime, the focus is on the result, not the different types of conduct, and the result is the basis for prosecution.[57] A nature-of-conduct crime's focus is the conduct and the different types of conduct are considered separate offenses.[58] In a circumstances-surrounding-the-conduct crime, different types of conduct may

49. U.S. Const. amend. V. *See also Speights v. State*, 464 S.W.3d 719, 722 (Tex.Crim.App. 2015); *Garfias v. State*, 424 S.W.3d 54, 58 (Tex.Crim.App.2014); *Loving v. State*, 401 S.W.3d 642, 646 (Tex.Crim.App.2013).

50. *Loving*, 401 S.W.3d at 646.

51. *Speights*, 464 S.W.3d at 722.

52. *Ex parte Benson*, 459 S.W.3d 67, 71 (Tex. Crim.App.2015) (citing *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) (asking whether each statutory provision requires proof of fact which the other does not considering only the pleadings and the statutory provisions and not the evidence presented at trial)).

53. *Id.*

54. *Id.* at 73–74.

55. *Speights*, 464 S.W.3d at 722 (citing *Ex parte Benson*, 459 S.W.3d at 73 and *Maldonado v. State*, 461 S.W.3d 144, 151 (Tex.Crim. App.2015)).

56. *Loving*, 401 S.W.3d at 647. *See also Young v. State*, 341 S.W.3d 417, 423 (Tex.Crim.App. 2011) (examining these three categories of offenses).

57. *Huffman v. State*, 267 S.W.3d 902, 907 (Tex.Crim.App.2008).

58. *Id.*

establish alternate methods of proving a single crime, as opposed to separate crimes, as long as the circumstances surrounding that conduct are the same.[59] In these types of cases, the focus is on "the particular circumstances that exist rather than the discrete, and perhaps different, acts that the defendant might commit under those circumstances."[60]

We begin with the statute's language to determine the offense's gravamen. Looking to the three types of crimes explained above, according to the statute's language, we hold a civil-commitment order violation is a circumstances-surrounding-the-conduct crime. A violation arises only by the circumstance that the person has been adjudicated a sexually violent predator who has been civilly committed. The forbidden act is violating the civil-commitment order. The failure to comply with statutorily imposed conditions is proscribed solely by virtue of the person being a civilly committed sexually violent predator. Failure to abide by any of the statutory requirements is the means by which the State can prove a sexually violent predator violated the civil-commitment order. It is the very circumstance that the person has been adjudicated a sexually violent predator resulting in a civil-commitment order that renders otherwise innocent conduct criminal.[61]

We next look at the evidence presented at trial to determine how many units have been shown and whether the evidence would actually support conviction and punishment under each theory of the offense. Having determined above that the evidence sufficiently supported Stevenson's guilty verdict because the State demonstrated Stevenson was adjudicated a sexually violent predator, was subject to a civil-commitment order, and then violated that order, we conclude that the entry of three judgments violated Stevenson's doubly-jeopardy right against multiple punishments. Therefore, Stevenson's two additional judgments should be vacated because the statute creates a single offense for violating § 841.082's requirements, not a separate, punishable offense for each alleged way that a violation occurred.

The court of appeals here did not conduct this analysis and instead found *Jones v. State*[62] instructive. We do not. *Jones* is wholly distinguishable from the present case. *Jones* examined the false statement to obtain property or credit offense.[63] In that case, using both the units-of-prosecution analysis and the "a/any test," we determined that § 32.32(b)'s unit of prosecution was each materially false or misleading statement.[64] And while the statute here does employ the use of "a" just like § 32.32(b), § 841.085 is nevertheless distinguishable from § 32.32(b) because § 32.32(b) is a nature of conduct crime; whereas § 841.085 is a circumstance of conduct crime. It is the very conduct, making a false or misleading statement that is the gravamen of the offense under § 32.32(b). Yet here, it is not the conduct that establishes the civil-

---

59. *Id. See also Robinson v. State,* 466 S.W.3d 166 (Tex.Crim.App.2015) (holding that a sex offender's failure to register offense is a "circumstances-of-conduct" crime and the gravamen of the offense is the duty to register).

60. *Young,* 341 S.W.3d at 424.

61. *See Huffman,* 267 S.W.3d at 907 (explaining circumstances of conduct offenses in the context of the failure to stop and render aid statute).

62. 323 S.W.3d 885 (Tex.Crim.App.2010).

63. TEX. PENAL CODE § 32.32(b) (West 2015).

64. *Jones,* 323 S.W.3d at 892.

commitment order violation, it is the circumstance coupled with the conduct that results in a criminal offense.[65] Because these two statutes are distinguishable from one another, the court of appeals incorrectly applied Jones's analysis in the present case.

In its post-submission brief, the State concedes that Stevenson's judgments on counts one and three should be vacated because of the recent legislative amendments eliminating the statutorily imposed conditions that counts one and three relied upon.[66] To indulge the State's concession requires holding that the statutory amendments apply retroactively, an issue Stevenson did not raise and one upon which we did not grant review. We need not address the amendments' retroactive application—an issue pending before this Court—having resolved Stevenson's double-jeopardy claim on our double-jeopardy precedent.[67] While the State could have alleged that Stevenson violated the civil-commitment order in one of three ways, it was not entitled to three separate judgments. We therefore vacate Stevenson's convictions in counts one and three.

### D. Stevenson's remaining arguments

Stevenson lastly argues that the trial judge erred by denying his motion to quash and excluding evidence that the civil-commitment order was not final. On both points, Stevenson's argument rests on the pending appeal during the trial for the violation.[68] However, his analysis for this argument rests on the same jurisdictional arguments he made in his second and third points of error; not how the court of appeals' analysis was in error.

■ The Texas Rules of Appellate Procedure require appellants to provide a brief containing "clear and concise argument[s] for the contentions made, with appropriate citations to authorities and to the record."[69] Under Degrate v. State, when an appellant fails to explain why the court of appeals' opinion should be reviewed and fails to discuss legal principles or relevant facts, this Court will decline review.[70] In State v. Gonzalez, we likewise held that "[w]hen a party raises a point of error without citation of authorities or argument, nothing is presented for appellate review."[71]

Likewise, here Stevenson's brief fails to set out properly the issues raised from the court of appeals' decision. Stevenson does not cite to any authority or facts to explain how the court of appeals incorrectly made its findings. Stevenson merely states that "[t]he analysis in this issue is the same as Questions Number Two and Three." Moreover, Stevenson asserts the trial court erred, not that the court of appeals erred. For these reasons, Stevenson's remaining issues are dismissed.

---

**65.** See Robinson, 466 S.W.3d at 170–71 (explaining that every circumstances-of-conduct offense necessarily carries a conduct element).

**66.** See Tex. Health & Safety Code Ann. §§ 841.082(a), 841.085(a) (West 2015) (amending the statute by eliminating a number of requirements and bases for criminal prosecution).

**67.** Vandyke v. State, 485 S.W.3d 507 (Tex. App.–Beaumont 2016, pet. granted).

**68.** See State v. Mechler, 153 S.W.3d 435, 439 (Tex.Crim.App.2005) (explaining that relevancy issues are inherently discretionary to the trial court and an appellate court's review must be abuse of discretion).

**69.** Tex. R. App. P. 38.1(i).

**70.** 712 S.W.2d 755, 756 (Tex.Crim.App.1986).

**71.** 855 S.W.2d 692, 697 (Tex.Crim.App.1993).

### III. Conclusion

The court of appeals' decision is affirmed, with the exception of its holding on Stevenson's double-jeopardy claim. Finding the claim meritorious, we vacate Stevenson's convictions on counts one and three as provided in the indictment.