# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-24-00339-CR

---

**Timothy Carlton Johnson, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE 26TH DISTRICT COURT OF WILLIAMSON COUNTY
NO. 21-0831-K26, THE HONORABLE GUADALUPE RIVERA, JUDGE PRESIDING**

---

## O P I N I O N

Timothy Carlton Johnson was convicted of the offense of making a terroristic threat and was sentenced to two years' imprisonment. *See* Tex. Penal Code §§ 12.34, 22.07(a)(6), (e). In two issues on appeal, Johnson contends that the trial court erred by failing to include in the jury charge an instruction for a lesser-included offense and by omitting from the jury charge a portion of the statutory definition for the applicable culpable mental state. We will affirm the trial court's judgment of conviction.

## BACKGROUND

On January 29, 2021, the court administrator for County Court at Law Number 2 in Williamson County sent out an email notification to several lawyers and defendants concerning a virtual criminal docket hearing that was scheduled to take place on February 5, 2021. One of the recipients of the email was Johnson.

Three days later, Johnson sent two reply emails to all of the recipients. In the first reply, Johnson claimed to be a lawyer named BOLDt representing himself (Johnson) and asserted that Johnson was keeping "his Sovereinty" and that no common law or admiralty law could force him to use software on his own laptop. Johnson, as BOLDt, told the recipients "Behold the Pale King on the horse prophesized on the Isle of Cyprus between the brothers Set and witches get a pail of water to the face! Send out your Champion! I'm ready for Trial . . . Au Revoir! Champion, Au Revoir." In the second reply, Johnson stated that BOLDt "is a ROBOt, lawyer, that a computer scientist and [he] have been working on." He also described "this BOLDt BOT [as] more dangerous to global stability than the Manhattan [P]roject and it very well could lead to [W]ar [W]ar III, cause no bitches are going to boss me around on my own laptop." In closing, Johnson told the recipients that he had "deep and extensive files on each one of you, and none of you have the moral fortitude required . . . ."

After sending the emails, Johnson called the court administrator to discuss his case. During the call, he referred to the court administrator as a "bitch." The court administrator informed him that she would no longer speak with him on the phone, but he called her twenty more times that day.

On the day of the scheduled virtual hearing, Johnson appeared late. He was dressed "like a 1950s version of a robot" with goggles and a boxy cardboard outfit, was wearing a mask, and was holding a lightsaber and a sign with the words "I object" written on it. During the hearing, Johnson referred to the judge as "[y]our highness." The judge informed Johnson that she had to recuse herself due to the communications that he had sent. Johnson asked who was in charge of the record for the case, and the judge explained that the court reporter was making a record of the hearing. Johnson stated that he had been directed to download software

2

in a manner that violated international law and wanted the judge to give him the court reporter's name and to tell him how to get a copy of the record. The judge informed Johnson that he would no longer be able to call the court and should instead communicate with the court in writing. Johnson responded as follows: "Well what we'll do is, we'll just get Ted Cruz and we'll start a march right to your office you bitch and we'll -- we'll hang you." At that point, the judge informed Johnson that the hearing was over and terminated the virtual hearing.

Following the hearing, Johnson was charged with making a terroristic threat. Before the start of trial, Johnson chose to represent himself but was also given standby counsel. During the trial, the following exhibits were admitted into evidence: copies of Johnson's emails, the transcript of the virtual hearing, and an audio recording of that hearing. At trial, the State called as witnesses the court reporter, three prosecutors who were present during the virtual hearing, the court administrator, and the judge, and the witnesses testified regarding the events described above. During his case-in-chief, Johnson elected to testify. In his testimony, Johnson related that he did not like being compelled by the government, that the witnesses were lying, and that memories of his past lives and other identities made it difficult to recall what happened to the person with the identity "Johnson" whom Johnson described as being more like an avatar than a real person. Johnson denied making a terroristic threat in his emails but admitted that what he said to the judge was inappropriate and constituted harassment.

After considering the evidence presented at trial, the jury found Johnson guilty of the charged offense. Johnson appeals the trial court's judgment of conviction.

## STANDARD OF REVIEW AND GOVERNING LAW

In both of his issues on appeal, Johnson argues that there were errors in the jury charge. When preparing a jury charge, a trial court must deliver to the jury a written charge distinctly setting forth the law applicable to the case. Tex. Code Crim. Proc. art. 36.14. Jury instructions must apply the law to the facts adduced at trial and conform to the allegations in the indictment. *Sanchez v. State*, 376 S.W.3d 767, 773 (Tex. Crim. App. 2012). When addressing an issue regarding an alleged jury-charge error, appellate courts must first decide whether there is error before addressing whether the alleged error resulted in any harm. *See Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). In reviewing a charge for alleged error, we examine the charge as a whole rather than as a series of isolated and unrelated statements. *Dinkins v. State*, 894 S.W.2d 330, 339 (Tex. Crim. App. 1995). The amount of harm needed for a reversal depends on whether a complaint regarding "that error was preserved in the trial court." *Swearingen v. State*, 270 S.W.3d 804, 808 (Tex. App.—Austin 2008, pet. ref'd). If no objection was made, a reversal is warranted only if the error "resulted in 'egregious harm.'" *See Neal v. State*, 256 S.W.3d 264, 278 (Tex. Crim. App. 2008) (quoting *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)). However, if the defendant made a timely objection, reversal is required if there has been "some harm." *Ngo*, 175 S.W.3d at 743 (quoting *Almanza*, 686 S.W.2d at 171).

## DISCUSSION

In his first issue, Johnson contends that the trial court erred by failing to include a lesser-included-offense instruction for the offense of harassment. In his second issue, he asserts

4

that the trial court erred by failing to include in the definition for "intentionally" an instruction pertaining to the result of his alleged conduct.

## Lesser Included Offense

On appeal, Johnson contends that harassment was a lesser-included offense in this case because harassment could be established by the same or less than all of the facts alleged for the charged offense of terroristic threat. Specifically, he argues that if the element of terroristic threat requiring that the offender intend to influence governmental conduct or activities is removed, then the remainder of the elements for terroristic threat, if proved, could establish the offense of harassment. Accordingly, he asserts that harassment could have been proven by less than the facts required to prove terroristic threat. Further, he references testimony that he contends shows that he only intended to annoy the judge and argues that this evidence would have allowed the jury to determine that he was guilty of harassment only. For these reasons, Johnson contends that the trial court should have granted his request for an instruction on harassment.

Appellate courts "use a two-step analysis to determine if a defendant is entitled to a lesser-offense instruction." *Ritcherson v. State*, 568 S.W.3d 667, 670 (Tex. Crim. App. 2018). "The first step is to determine whether the requested instruction pertains to an offense that is a lesser-included offense of the charged offense . . . ." *Bullock v. State*, 509 S.W.3d 921, 924 (Tex. Crim. App. 2016). If the appellate court determines that the requested instruction pertains to a lesser-included offense of the charged offense, it must then move on to the second step and determine if there is "evidence from which a rational jury could find the defendant guilty of only the lesser offense." *Ritcherson*, 568 S.W.3d at 671.

5

Lesser-included offenses are defined in the Texas Code of Criminal Procedure. Tex. Code Crim. Proc. art. 37.09. Of significance to this appeal, the Code specifies that an "offense is a lesser included offense if . . . it is established by proof of the same or less than all the facts required to establish the commission of the offense charged." *Id.* art. 37.09(1). When performing the first step of a lesser-included analysis, appellate courts "compare the statutory elements of the alleged lesser offense and the statutory elements and any descriptive averments in the indictment." *Ritcherson*, 568 S.W.3d at 670-71. An offense is a lesser-included one under article 37.09(1) "if the indictment for the greater-inclusive offense either: 1) alleges all of the elements of the lesser-included offense, or 2) alleges elements plus facts (including descriptive averments, such as non-statutory manner and means, that are alleged for purposes of providing notice) from which all of the elements of the lesser-included offense may be deduced." *Cavazos v. State*, 382 S.W.3d 377, 382 (Tex. Crim. App. 2012) (quoting *Ex parte Watson*, 306 S.W.3d 259, 273 (Tex. Crim. App. 2009) (op. on reh'g)). "Under this first step of the test, an offense is a lesser-included offense if it is within the proof necessary to establish the offense charged." *Bullock*, 509 S.W.3d at 924. This step presents a question of law. *Id.* In addressing this step, appellate courts "do not consider the evidence presented at trial . . . but only what the State is required to prove to establish the charged offense." *Cannon v. State*, 401 S.W.3d 907, 910 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd).

The charged offense in this case was terroristic threat. A person commits the felony offense of terroristic threat "if he threatens to commit any offense involving violence to any person or property with intent to . . . influence the conduct or activities of a branch or agency of the federal government, the state, or a political subdivision of the state." Tex. Penal Code § 22.07(a)(6), (e). The indictment alleged that Johnson "did then and there threaten to commit

6

an offense involving violence to a person, namely, Murder of a Judge, with intent to influence the conduct or activities of . . . Williamson County Court at Law 2."

The request for a lesser-included instruction concerned the offense of harassment. Regarding harassment, the Penal Code lists nine alternative manners by which an individual can commit the offense. *Id.* § 42.07(a). Most of the alternatives address misconduct that could have no bearing on the allegations in this case. *See id.* § 42.07(a)(1), (3)-(9) (concerning obscene comments, false reports of death or serious bodily injury, electronic communications, telephone calls, and efforts to track property of others). The second alternative specifies that a person commits an offense if he "with intent to harass, annoy, alarm, abuse, torment, or embarrass another":

> (2) threatens, in a manner reasonably likely to alarm the person receiving the threat, to inflict bodily injury on the person or to commit a felony against the person, a member of the person's family or household, or the person's property[.]

*Id.* § 42.07(a)(2).

Although both harassment and terroristic threat as alleged in the indictment require that an individual threaten to commit an offense, *id.* §§ 22.07(a), 42.07(a)(2), the harassment statute also requires that the person do so "with intent to harass, annoy, alarm, abuse, torment, or embarrass another," *id.* § 42.07(a). The harassment statute also requires that the subject of the threat be the person receiving the threat, a member of that person's family, or the person's property. *Id.* § 42.07(a)(2). Those additional requirements are not present in the terroristic-threat statute and, therefore, proving the statutory elements of terroristic threat would not prove all of the elements of harassment. *Id.* §§ 22.07, 42.07; *see Cavazos*, 382 S.W.3d at 382. Furthermore, the facts alleged in the indictment, including averments regarding the threat

7

and offense threatened, do not provide a basis from which the additional elements (e.g., intending to cause one of the negative experiences listed in the statute and the subject of the threat being the person receiving the threat or someone or property affiliated with that person) may be deduced. *See Cavazos*, 382 S.W.3d at 382; *see also Lewis v. State*, 88 S.W.3d 383, 387 (Tex. App.—Fort Worth 2002, pet. ref'd) (determining that harassment was not lesser-included offense of stalking because harassment "is not established by proof of the same or less than all the facts required to establish the offense of stalking" where harassment required proof of repeated calls but stalking required only proof of single call and where harassment required proof of intent to harass, annoy, alarm, abuse, torment, or embarrass another); *see also State v. Burdett*, 762 P.2d 164, 166-67 (Haw. 1988) (concluding that harassment was not lesser-included offense of terroristic threat under Hawaii law and noting that two offenses addressed "different societal interests" as indicated by terroristic threat's classification as offense against person and by harassment's classification as offense against public order).

For these reasons, we conclude that the offense of harassment is not a lesser-included offense of terroristic threat as alleged in this case and need not address the second step in the lesser-included analysis. *Ritcherson*, 568 S.W.3d at 671. Accordingly, we overrule Johnson's first issue on appeal.

**Result of Conduct**

In his second issue on appeal, Johnson notes that although the trial court included a definition for "intentionally" in the charge, it did not include the full definition as set out in the Penal Code. The Penal Code provides that "[a] person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective

or desire to engage in the conduct or cause the result." Tex. Penal Code § 6.03(a). The jury charge tracked the first part of the definition but did not include the portion relating to the result of conduct. On appeal, Johnson argues that he should have had a charge that fully mirrored the Penal Code definition.

Section 6.03 of the Penal Code defines four culpable mental states and three possible conduct elements—nature of the conduct, result of the conduct, and circumstances surrounding the conduct. *See id.* § 6.03; *Price v. State*, 457 S.W.3d 437, 441 (Tex. Crim. App. 2015). The conduct elements are referred to as the gravamen or focus of a Penal Code provision. *See Llorens v. State*, 520 S.W.3d 129, 138 (Tex. App.—Austin 2017, pet. ref'd). For intentional mental states, the possible conduct elements are nature of the conduct and result of the conduct. Tex. Penal Code § 6.03. "If the offense is a result-of-conduct crime, the focus is on the result, not the different types of conduct, and the result is the basis for prosecution." *Stevenson v. State*, 499 S.W.3d 842, 850 (Tex. Crim. App. 2016); *see also Young v. State*, 341 S.W.3d 417, 423 (Tex. Crim. App. 2011) (noting that for result-of-conduct offenses, focus is on product of certain conduct). "A nature-of-conduct crime's focus is the conduct and the different types of conduct are considered separate offenses." *Stevenson*, 499 S.W.3d at 850. These types of offenses prohibit certain acts or conduct "regardless of any result that might occur." *See Young*, 341 S.W.3d at 423. When determining the gravamen for a statute, appellate courts may focus on the statute's grammar and what element completes the offense. *Loving v. State*, 401 S.W.3d 642, 647 (Tex. Crim. App. 2013). A jury charge on a culpable mental state should be tailored to the gravamen of the offense. *Price*, 457 S.W.3d at 441.

As set out above, under the Penal Code, an individual commits the offense of terroristic threat "if he threatens to commit any offense involving violence to any person or

9

property with intent to . . . influence the conduct or activities of a branch or agency of the federal government, the state, or a political subdivision of the state." Tex. Penal Code § 22.07(a)(6). When discussing this statute, the Court of Criminal Appeals has explained that "it is immaterial to the offense whether the accused had the capability or the intention to carry out his threat" and that "[a]ll that is necessary to complete the offense is that the accused by his threat" wanted a desired reaction. *Dues v. State*, 634 S.W.2d 304, 305-06 (Tex. Crim. App. 1982).

Consistent with the above description of terroristic threat, one of our sister courts of appeals has specifically determined that terroristic threat is a nature-of-conduct offense. *Gillette v. State*, 444 S.W.3d 713, 730 (Tex. App.—Corpus Christi-Edinburg 2014, no pet.). Initially, our sister court highlighted that nature-of-conduct offenses proscribe certain acts regardless of any result that might occur from those acts. *Id.* at 728. When determining what the gravamen for terroristic threat was, our sister court explained that the focus of the statute is on "the intended effect of a threat, not the threat itself." *Id.* at 729. "In other words, the gravamen of the statute, as implicated by the statute's name, is terrorizing by threat; a threat, without a terroristic intent, is not a *terroristic* threat." *Id.* "The element that completes the offense [] . . . is the actor's intent to cause a particular reaction by threatening." *Id.* (internal citations omitted). The statute's focus is on the nature of the conduct "rather than the circumstances or results." *Id.* at 730.[1]

---

[1] In his brief, Johnson contends that *Gillette v. State* should not be relied on because the evidence in *Gillette* pertaining to the threats made in that case indicated that the defendant had military training and an ability to carry out his threats. 444 S.W.3d 713, 719 (Tex. App.—Corpus Christi-Edinburg 2014, no pet.). Although there are differences between *Gillette* and this case concerning the types of threats made, those differences do not affect the gravamen of the offense of terroristic threat or persuade us that the analysis from *Gillette* is incorrect.

We agree with the reasoning from our sister court and similarly conclude that the gravamen for the terroristic-threat statute is the nature of the conduct and that the offense proscribes conduct regardless of what result might occur from the conduct. *See id.* Accordingly, the trial court did not err by omitting the "result of his conduct" language from the definition for "intentionally" in the jury charge. *See Holloway v. State*, 621 S.W.3d 753, 758 (Tex. App.—Waco 2020, no pet.); *see also Wesley v. State*, 605 S.W.3d 909, 918 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (concluding that it was error to include "'result-oriented' portion of the culpable mental state definitions" in charge for nature-of-conduct offense).

For these reasons, we overrule Johnson's second issue on appeal.

## CONCLUSION

Having overruled both of Johnson's issues on appeal, we affirm the trial court's judgment of conviction.

_____

Karin Crump, Justice

Before Justices Theofanis, Crump, and Ellis

Affirmed

Filed:   March 28, 2025

Publish

11