Dara Marie **LLORENS**, Appellant

v.

**The STATE of Texas, Appellee**

**NO. 03–16–00257–CR**

Court of Appeals of Texas, Austin.

Filed: April 21, 2017

---

Karen E. Oprea, Austin, TX, for Appellant.

Rosa Theofanis, M. Scott Taliaferro, Austin, TX, for State.

Before Justices Puryear, Pemberton, and Goodwin

## OPINION

David Puryear, Justice

After Dara Marie Llorens and Greg Allen got divorced, Llorens moved to Mexico with their young daughter, S.A., and remained there for twelve years before being discovered by authorities. Eventually, Llorens was arrested and charged with kidnapping and with interference with child custody. *See* Tex. Penal Code §§ 20.03(a) (setting out elements of offense of kidnapping), 25.03(a) (governing offense of interference with child custody). Llorens entered a guilty plea to both charged offenses and requested that the district court assess her punishment for both offenses. Following a sentencing hearing, the district court sentenced Llorens to two years' imprisonment for the interference charge and to six years' imprisonment for the kidnapping charge. *See id.* §§ 20.03(c) (stating that kidnapping is third-degree felony), 25.03(d) (providing that interference with child custody is state-jail felony); *see also id.* §§ 12.34–.35 (setting out permissible punishment ranges for third-degree felonies and for state-jail felonies). After Llorens's sentencing, the district court certified that Llorens had the right to appeal her convictions. In two issues on appeal, Llorens contends that her convictions for both offenses violated her double-jeopardy guarantee against multiple punishments for the same offense and that there was no basis for some of the court costs imposed by the district court. We will modify the district court's judgment pertaining to the kidnapping conviction to remove some of the court costs imposed and, as modified, affirm that judgment and affirm the judg-

ment pertaining to the interference-with-child-custody conviction.

## DISCUSSION

### Double Jeopardy

■ In her first issue on appeal, Llorens contends that her "convictions for kidnapping and interference with child custody violated the Double Jeopardy Clause because they punish her twice for the same conduct in contravention of legislative intent."

■ In resolving this issue on appeal, we note, as a preliminary matter, that Llorens did not present this double-jeopardy claim to the district court. *See Gonzalez v. State*, 8 S.W.3d 640, 642 (Tex. Crim. App. 2000) (explaining that, in general, defendant has burden to preserve double-jeopardy objection); *see also* Tex. Code Crim. Proc. art. 1.14(b) (specifying that defendant waives right to appeal error in indictment if he does not object to error before trial commences). Typically, the failure to present an issue to the district court prevents the issue from being considered on appeal. *See* Tex. R. App. P. 33.1(a) (requiring that complaint be made to trial court in order to preserve issue for appeal). However, the court of criminal appeals has determined that "because of the fundamental nature of double jeopardy protections, a double jeopardy claim may be raised for the first time on appeal … when the undisputed facts show the double jeopardy violation is clearly apparent on the face of the record and when enforcement of usual rules of procedural default serves no legitimate state interests." *Gonzalez*, 8 S.W.3d at 643. "A double-jeopardy claim is apparent on the face of the trial record if resolution of the claim does not require further proceedings for the purpose of introducing additional evidence in support of the double-jeopardy claim." *Ex parte Denton*, 399 S.W.3d 540, 544 (Tex. Crim. App. 2013); *see also Ex parte Marascio*, 471 S.W.3d 832, 837 (Tex. Crim. App. 2015) (Keasler, J., concurring) (noting, with exceptions, that under current state of law, "the clearly-apparent-from-the-record factor requires that we reach the merits of the claim before determining whether the claim is properly presented").

■ The "Double Jeopardy Clause protects criminal defendants from three things: 1) a second prosecution for the same offense after acquittal; 2) a second prosecution for the same offense after conviction; and 3) multiple punishments for the same offense." *Ex parte Milner*, 394 S.W.3d 502, 506 (Tex. Crim. App. 2013). "When a defendant is convicted of two or more crimes in a single trial, only the third of these protections is implicated." *Duvall v. State*, 59 S.W.3d 773, 777 (Tex. App.–Austin 2001, pet. ref'd). "A double jeopardy claim based on multiple punishments arises when the State seeks to punish the same criminal act twice under two distinct statutes under circumstances in which the Legislature intended the conduct to be punished only once." *Shelby v. State*, 448 S.W.3d 431, 435 (Tex. Crim. App. 2014). "While double jeopardy precludes a defendant from being punished twice for the same offense, it does not prevent a second punishment for the same conduct." *McCrary v. State*, 327 S.W.3d 165, 178 (Tex. App.–Texarkana 2010, no pet.).

The indictment in this case alleged that Llorens committed the crime of kidnapping "on or about the 29th day of April A.D. 2002" by "intentionally or knowingly" abducting S.A. "by restricting the movements of [S.A.] without her consent, so as to interfere substantially with her liberty, by moving her from one place to another or by confining her, with intent to prevent her liberation by secreting or holding her in a place where she was not likely to be

found." Further, the indictment alleged that Llorens committed the crime of interfering with child custody "on or about the 15th day of August A.D. 2014" by "intentionally or knowingly tak[ing] or retain[ing] [S.A.], a child younger than 18 years of age, knowing that the taking or retention violated the express terms of a judgment or order ... disposing of the child's custody," or by "intentionally or knowingly tak[ing] or retain[ing] [S.A.], a child younger than 18 years of age, outside of the United States with intent to deprive ... Allen of possession or access to [S.A.], and without the permission of ... Allen," who "was entitled to possession of or access to" S.A.

When entering her guilty pleas, Llorens signed a judicial confession stating that she committed the offenses "as alleged in the indictment." See Chindaphone v. State, 241 S.W.3d 217, 218, 220 (Tex. App.–Fort Worth 2007, pet. ref'd) (concluding that judicial confession was sufficient to support plea where it stated as follows: "I have read the indictment or information

filed in this case and I committed each and every act alleged therein"). Accordingly, it would seem that error might not be apparent on the face of the record because the indictment alleged two offenses that occurred twelve years apart from one another. Cf. Collins v. State, No. 02-09-00303-CR, 2010 WL 3433281, at *5 (Tex. App.–Fort Worth Aug. 31, 2010, pet. ref'd) (mem. op., not designated for publication) (determining that defendant failed to preserve double-jeopardy claim where error did not appear on face of record because indictment alleged that offenses occurred on dates in different years and because testimony at trial established that abuse occurred over several year period). Even disregarding the twelve-year gap and assuming that the remainder of the record demonstrates that the same act served as the basis for both convictions, as suggested by Llorens, we would be unable to conclude that a double-jeopardy claim is clearly apparent on the face of the record for the reasons that follow.[1]

---

1. In her reply brief, Llorens asserts that the gap in time for the offenses at issue cannot support a conclusion that error is not present on the face of the record. On the contrary, Llorens contends that the remainder of the record, including testimony during the sentencing hearing, demonstrates that the alleged misconduct underlying both offenses was the same act of moving S.A. to Mexico and keeping her there for twelve years. Further, Llorens urges that kidnapping is a continuous crime and asserts that the State may not divide that time "up into multiple crimes that are 'the same' for double jeopardy purposes as kidnapping." See Brown v. Ohio, 432 U.S. 161, 169–70, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977) (noting that prosecutors cannot avoid double-jeopardy implications "by the simple expedient of dividing a single crime into a series of temporal or spatial units" and that "the specification of different dates in the two charges on which [the defendant] was convicted cannot alter the fact that he was placed twice in jeopardy for the same offense"). In addition, Llorens contends that the

"State cannot avoid the restrictions of the Double Jeopardy Clause by securing a conviction based on a charging instrument with separate dates" and that the "controlling factor in the double jeopardy inquiry is not the dates alleged in the indictment, but whether there is proof that the conduct alleged constituted the same or different offenses."

However, we note that many of the cases relied on by Llorens in support of her arguments do not address double-jeopardy concerns. See Sledge v. State, 953 S.W.2d 253, 255 (Tex. Crim. App. 1997) (addressing appellate issue of whether State may convict defendant based on "extraneous offenses"); Weaver v. State, 657 S.W.2d 148, 149 (Tex. Crim. App. 1983) (listing appellate issues as sufficiency challenge, objection to jury charge, and objection to trial court's decision to not allow subpoenas for "out-of-state witnesses"). Of the cases relied on by Llorens that did address the concept of double jeopardy, none of them addressed a situation in which an indictment alleged offenses occurring years apart and in which the defendant failed to make a double-

**Statutory Elements as Charged**

 "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Under Texas law, reviewing courts "do not consider the statutory elements in the abstract" and instead " 'focus on the elements alleged in the charging instrument' to determine whether the offenses *as charged* require proof of the same elements." *Zuliani v. State*, 383 S.W.3d 289, 295 (Tex. App.–Austin 2012, pet. ref'd) (quoting *Bigon v. State*, 252 S.W.3d 360, 370 (Tex. Crim. App. 2008)). If the two offenses require proof of different facts, then there is a rebuttable presumption that the offenses are "different for double-jeopardy purposes." *Ex parte Benson*, 459 S.W.3d 67, 72 (Tex. Crim. App. 2015).

Under the Penal Code, a person commits the offense of kidnapping if he "intentionally or knowingly abducts another person." Tex. Penal Code § 20.03(a). As limited by the allegations in the indictment, a person abducts another person if he "restrain[s] a person with intent to deprive his liberation by ... secreting or holding him in a place where he is not likely to be found." *Id.* § 20.01(2)(A). In this context, " '[r]estrain' means to restrict a person's movements without consent, so as to interfere substantially with the person's liberty, by moving the person from one place to another or by confining the person." *Id.* § 20.01(1).

In contrast, interference with child custody does not require proof of abduction by showing an intent to hide someone in a place where the individual is not likely to be found. *See id.* § 25.03. Instead, as charged in the indictment, the offense requires proof that a person "takes or retains a child younger than 18 years of age" knowing that it "violates the express terms of a judgment or order ... disposing of the child's custody" or "takes or retains a child younger than 18 years of age ... outside of the United States with the intent to deprive a person entitled to possession of or access to the child of that possession or access and without the permission of that person." *Id.* § 25.03(a)(1), (3).

Accordingly, the offenses as charged required proof of different elements, which weighs in favor of a determination that there were two offenses. *See Dewalt v. State*, 307 S.W.3d 437, 463 (Tex. App.–Austin 2010, pet. ref'd) (determining that "[p]roof of kidnapping, as alleged in the indictment, would not subsume the elements of interference with child custody" as alleged because "the State could prove kidnapping without proving" that defendant knew that taking or retention violated

---

jeopardy objection to a trial court. *See Brown*, 432 U.S. at 163, 97 S.Ct. 2221 (discussing how defendant objected on double-jeopardy grounds and how trial court overruled objection); *Aekins v. State*, 447 S.W.3d 270, 273, 281 (Tex. Crim. App. 2014) (addressing for first time on appeal double-jeopardy claim regarding three sexual offenses alleged to have occurred on same day); *Ex parte Hawkins*, 6 S.W.3d 554, 554–55 (Tex. Crim. App. 1999) (addressing double-jeopardy issue concerning two aggravated robbery offenses in indictment that were alleged to have occurred on same day); *Luna v. State*, 493 S.W.2d 854, 855 (Tex. Crim. App. 1973) (stating that defendant asserted on appeal "that the trial court erred in overruling ... his plea of 'former jeopardy' "). In any event, as set out above, even if we agreed that the remainder of the record establishes that the conduct underlying both offenses was the same, we would still conclude that no double-jeopardy violation is apparent on the face of the record.

express terms of judgment or order); *see also Peinado v. State*, Nos. 05-14-00418-00419-CR, 2015 WL 4931492, at *8, *9 (Tex. App.–Dallas Aug. 18, 2015, no pet.) (mem. op., not designated for publication) (affirming convictions for kidnapping and for interference with child custody based on same alleged misconduct).

**Other Factors Considered in Double Jeopardy Analysis**

In her brief, Llorens concedes "that kidnapping and interference with child custody, as pleaded in the indictment, … each require proof of a fact that the other does not." However, Llorens argues that when a double-jeopardy claim involves crimes from different statutory provisions, the elements analysis above "is the starting point" and is "not the exclusive test for determining if two offenses are the same." *See Shelby*, 448 S.W.3d at 436. Indeed, "[t]he ultimate question is whether the Legislature intended to allow the same conduct to be punished under both of the statutes in question." *Id.* "When there are two separate statutory provisions, the analysis" also requires "a units analysis." *Stevenson v. State*, 499 S.W.3d 842, 850 (Tex. Crim. App. 2016). "A units analysis considers what the allowable unit of prosecution is, based on the statute's construction and ascertaining the gravamen of the offense, and how many units have been shown by examining the evidence presented at trial." *Id.* "Double jeopardy is not violated if the Legislature intended the offenses to constitute 'separate allowable units of prosecution.'" *Id.* (quoting *Speights v. State*, 464 S.W.3d 719, 722 (Tex. Crim. App. 2015)).

The court of criminal appeals has identified the following factors to assist courts in determining whether the legislature intended to allow the same conduct to be punished under two statutes:

[1] whether offenses are in the same statutory section; [2] whether the offenses are phrased in the alternative; [3] whether the offenses are named similarly; [4] whether the offenses have common punishment ranges; [5] whether the offenses have a common focus; [6] whether the common focus tends to indicate a single instance of conduct; [7] whether the elements that differ between the two offenses can be considered the same under an imputed theory of liability that would result in the offenses being considered the same under *Blockburger*; and [8] whether there is legislative history containing an articulation of an intent to treat the offenses as the same or different for double jeopardy purposes.

*Shelby*, 448 S.W.3d at 436 (quoting *Garfias v. State*, 424 S.W.3d 54, 59 (Tex. Crim. App. 2014)). The fifth factor, "which requires a court to examine the 'focus' or 'gravamen' of a penal provision, should be regarded as the best indicator of legislative intent." *Id.*

*Statutory Sections*

When discussing the first factor, Llorens acknowledges that this factor weighs against a finding of a double-jeopardy violation, but she urges that this factor should only be considered a "slight factor" in favor of that determination. *See Ex parte Benson*, 459 S.W.3d at 78 (concluding that inclusion of two offenses in "the same chapter is a slight factor in favor of treating the offenses as the same"). As conceded by Llorens, the two offenses at issue are not in the same section and, in fact, do not even appear in the same chapter of the Penal Code. *See* Tex. Penal Code §§ 20.03, 25.03. The statute governing kidnapping is found in chapter 20 of title 5 of the Penal Code, whereas the statute pertaining to interference with child custody is found in chapter 25 of title 6. *Id.* chs. 20, 25. Ac-

cordingly, we must conclude that this factor weighs in favor of a determination that the legislature intended for the same conduct to be punished under both statutes. *See Stanley v. State*, 470 S.W.3d 664, 668–69 (Tex. App.–Dallas 2015, no pet.) (determining that factor weighed against double-jeopardy violation when two offenses were not listed "in the same statutory section or chapter").

*Alternative Phraseology*

As discussed above, the offenses at issue in this case are not in the same statutory section, *see* Tex. Penal Code §§ 20.03, 25.03, and, therefore, "cannot be phrased in the alternative," *see Stanley*, 470 S.W.3d at 669. Accordingly, this factor weighs in favor of a determination that the two offenses are not the same for double-jeopardy purposes.

*Names of the Offenses*

In her brief, Llorens acknowledges that the names of the two offenses (kidnapping and interference with child custody) are not similar, but she points out that a provision of the Code of Criminal Procedure entitled "Mandatory Restitution for Kidnapped or Abducted Children" lists interference with child custody and kidnapping as offenses for which a defendant must "pay restitution in an amount equal to the cost of necessary rehabilitation, including medical, psychiatric, and psychological care and treatment, for the victim of the offense if the victim is younger than 17 years of age." Tex. Code Crim. Proc. art. 42.0371(a). However, we do not believe that the inclusion of the two offenses in a restitution provision supports a determination that the two offenses should be considered the same even though the names are disparate. *See Ex parte Benson*, 459 S.W.3d at 79 (noting that offenses are "similarly named if they share[ ] a common word in the title"). Accordingly, we believe that this factor is either neutral or weighs

slightly in favor of a determination that the legislature intended to allow the same conduct to be punished under both statutes.

*Punishment Ranges*

When discussing the punishments factor, Llorens notes that courts have treated differing punishment ranges as not being dispositive of a double-jeopardy issue. *See Shelby*, 448 S.W.3d at 438 (observing that court had previously determined that "the fact that two of the offenses in question had different punishment ranges was not considered dispositive of the issue of double jeopardy"). In addition, Llorens notes that prior to 1993 both offenses had the same offense level. *See* Tex. Penal Code § 20.03(c) (setting out offense level for kidnapping); Act of May 29, 1993, 73d Leg., R.S., ch. 900, § 1.01, sec. 25.03(d), 1993 Tex. Gen. Laws 3586, 3626 (changing offense level for interference with child custody) (current version at Tex. Penal Code § 25.03(d)). However, under the current state of the law, the offenses do not share the same punishment range. Kidnapping is a third-degree felony, *see* Tex. Penal Code § 20.03(c), which has a punishment range of two to ten years' imprisonment, *see id.* § 12.34, and interference with child custody is a state-jail felony, *see id.* § 25.03(d), which carries a potential confinement range of 180 days to two years, *see id.* § 12.35. Accordingly, we believe that this factor weighs in favor of a determination that the two offenses are not the same.

*Gravamen of the Offenses and Units of Prosecution*

██ In her brief, Llorens contends that the "gravamen[ ] of both" offenses "are the same and both indicate a single instance of conduct." Specifically, Llorens argues that "[t]he completed act of each statute is the same: both statutes describe the forbidden act of taking possession of another." Further, Llorens urges that both

offenses dealt with "the abduction of a single victim effected by the same conduct" and that "[t]he victim is the focus of both crimes." *See Gonzales v. State*, 270 S.W.3d 282, 288 (Tex. App.–Amarillo 2008, pet. ref'd) (explaining that "the ultimate issue in a kidnapping offense is the abduction of the victim"). In addition, Llorens asserts that "[t]he record ... shows that [she] was convicted twice" for the same criminal act because the "criminal act was taking possession of [her] daughter, whom [she] kept in her possession for twelve years." Moreover, Llorens insists that she was not subject to multiple prosecutions for kidnapping or interference with child custody because the offense continued until S.A. was released. *See Weaver v. State*, 657 S.W.2d 148, 150 (Tex. Crim. App. 1983) (explaining that "abduction" can be "a continuous, ongoing event"). Similarly, Llorens insists "that the unit of prosecution is the same for both crimes, as each is measured by the victim." *Cf. Gonzales*, 270 S.W.3d at 288 (setting out "allowable unit of prosecution" for aggravated kidnapping).

 "The gravamen of the offense can be the result of conduct, the nature of conduct, or the circumstances surrounding the conduct." *Stevenson*, 499 S.W.3d at 850. "If the offense is a result-of-conduct crime, the focus is on the result, not the different types of conduct, and the result is the basis for prosecution." *Id.* "A nature-of-conduct crime's focus is the conduct and the different types of conduct are considered separate offenses." *Id.* "In a circumstances-surrounding-the-conduct crime, different types of conduct may establish alternate methods of proving a single crime, as opposed to separate crimes, as long as the circumstances surrounding that conduct are the same." *Id.* at 850–51. "In these types of cases, the focus is on 'the particular circumstances that exist rather

than the discrete, and perhaps different, acts that the defendant might commit under those circumstances.' " *Id.* at 851 (quoting *Young v. State*, 341 S.W.3d 417, 424 (Tex. Crim. App. 2011)). "[N]ot all offenses are characterized by a single conduct element," *Cook v. State*, 884 S.W.2d 485, 493 (Tex. Crim. App. 1994), and an offense may have "multiple gravamina," *Price v. State*, 457 S.W.3d 437, 441 (Tex. Crim. App. 2015).

 The gravamen for kidnapping is the act of "abduction," *Schweinle v. State*, 915 S.W.2d 17, 19 n.2 (Tex. Crim. App. 1996), and "kidnapping is a result-oriented offense" "because the ultimate issue in a kidnapping offense is the abduction of the victim" and not "how the person restrains or prevents the liberation of another," *Gonzales*, 270 S.W.3d at 288. " 'Abduct' ... has two elements": "the defendant must have restrained another," and "the defendant must have had the specific intent to prevent liberation." *Laster v. State*, 275 S.W.3d 512, 521 (Tex. Crim. App. 2009). "The offense of kidnapping is legally completed when the defendant, at any time during the restraint, forms the intent to prevent liberation by secreting or holding another in a place unlikely to be found." *Id.* "[T]he allowable unit of prosecution for" kidnapping "relates to the abduction of a victim." *Gonzales*, 270 S.W.3d at 288.

Regarding interference with child custody, we have been unable to find a case setting out the gravamen for the offense. As alleged in this case, a person commits the offense if he "takes or retains a child younger than 18 years of age" when he knows that taking or retaining the child "violates the express terms of a judgment or order ... disposing of the child's custody" or when he takes or retains a child "outside of the United States with the intent to deprive a person entitled to pos-

session of or access to the child of that possession or access and without the permission of that person." Tex. Penal Code § 25.03(a)(1), (3). Because the offense requires either the existence of a custody order or the keeping of a child outside of the United States with an intent to deprive someone else of access to a child in order for the act to be a crime, the focus of the offense would seem to be the circumstances surrounding the conduct.[2] *See id.*; *see also Stephenson*, 499 S.W.3d at 851 (determining that "a civil-commitment order violation is a circumstances-surrounding-the-conduct crime" because "[a] violation arises only by the circumstance that the person has been adjudicated a sexually violent predator who has been civilly committed" and because "[t]he forbidden act is violating the civil-commitment order").

Moreover, unlike the focus in the kidnapping statute on the victim of the kidnapping, the focus for the interference offense, as alleged in this case, seems not to be on the person taken or retained and instead to be on the violation of a court order or on the violation of rights belonging to a person who has rights of access or possession to a child who was taken or retained. *See* Tex. Penal Code § 25.03(a)(1), (3); *see also Ex parte Rhodes*, 974 S.W.2d 735, 736, 742 (Tex. Crim. App. 1998) (determining that conviction for interference with child custody violated double-jeopardy protections be-

cause defendant had previously been convicted of "criminal contempt ... based on the same conduct"). Further, the kidnapping statute requires proof that the person abducted did not consent, *see* Tex. Penal Code § 20.01(1), but the interference statute does not require proof of the child's consent in any of the alternative manners of committing the crime, *see id.* § 25.03(a). In fact, the only element potentially pertaining to consent in the portions of the interference statute at issue deals with whether a person with rights to a child gave permission for the child to be taken or retained. *See id.* § 25.03(a)(3). The difference in focus between the kidnapping statute and the statute prohibiting interference with child custody is also evidenced by the headings for the two titles containing those provisions. The heading for the title containing the kidnapping statute reads "Offenses Against the Person," *see id.* tit. 5, but the heading for the title containing the interference provision reads "Offenses Against the Family," *see id.* tit. 6. Moreover, in the circumstances present here, the unit of prosecution is the violation of a court order or the deprivation of a person's right to access or possess a child. *See id.* § 25.03(a)(1), (3); *Bodley v. State*, Nos. 05-09-00546-00547-CR, 2010 WL 1665280, at *1, *2 (Tex. App.–Dallas Apr. 27, 2010, no pet.) (not designated for publication) (upholding two convictions for interference with child custody where evi-

---

**2.** In her reply brief, Llorens notes that the interference-with-child-custody statute has "a circumstances-surrounding-the-conduct aspect to" it, but she urges that the kidnapping statute has a similar aspect to it because, for child victims in a certain age range, there must be evidence that a parent or guardian "has not acquiesced in the movement" of the child. *See* Tex. Penal Code § 20.01(1)(B). Further, Llorens points out that even though kidnapping has a surrounding-circumstances aspect to it, the gravamen of kidnapping is not considered to be the circumstances surround-

ing the conduct. *Cf. Shelby v. State*, 448 S.W.3d 431, 439 (Tex. Crim. App. 2014) (noting that determining gravamen for "result-oriented offense" "is not based on a consideration of most or all of the particular elements, but instead on the result of appellant's action"). Accordingly, Llorens urges this Court to conclude that the gravamen for interference with child custody is the same as for kidnapping. However, for the reasons set out in the body of the opinion, we believe that the two offenses do not share the same gravamen.

dence showed that defendant violated court order on two occasions by picking up child at daycare); *see also Harris v. State*, 359 S.W.3d 625, 630 (Tex. Crim. App. 2011) (explaining that "[o]ne aid in identifying the gravamen of the offense is grammar").

Given the different foci of the two offenses and the different units of prosecution, we believe that those factors weigh heavily in favor of a determination that the legislature intended to allow for the same conduct to be punished under both statutes.

*Legislative History*

When discussing the legislative-history factor, Llorens points to a bill analysis accompanying an amendment to a prior version of the interference-with-child-custody statute. *See* House Research Org., Bill Analysis, Tex. H.B. 113, 70th Leg., R.S. (1987). The subject of the analysis was listed as "[p]arental kidnapping," and the analysis discussed the need to remove the phrase " 'out of state' for the offense of taking children in violation of custody orders." In urging that the analysis supports a determination that the offenses in this case are the same, Llorens points to the portion of the analysis that summarizes why supporters of the amendment believed that the change needed to be made. Specifically, Llorens notes that the proponents stated that the amendment "is to protect children" and that "[k]idnapping by a stranger or a parent results in tremendous emotional trauma for the child" and suggested that the amendment should be made "because of the vagueness of Texas law concerning parental kidnapping," because the prior law did not make it "illegal for a non-custodial parent to kidnap a child as long as that parent stays within the state," because law-enforcement officials often "do not get involved unless the parent can prove that the child has been taken out of the state by the non-custodial par-

ent," and because "Texas has been described as a haven for parental kidnappers." *Id.* Moreover, Llorens points to a later bill analysis concerning changes to the interference-with-child-custody statute. *See* Senate Research Ctr., Bill Analysis, Tex. S.B. 1551, 82d Leg., R.S. (2011). The analysis discusses the provision criminalizing taking or retaining a child outside of the United States in order to interfere with a person's custodial rights, makes references to "the abducting parent," and explains that the proposed changes were based on "the federal International Parental Kidnapping Act." *Id.*

In light of the repeated references to parental kidnapping, Llorens contends that "the Legislature had no intention of punishing parental kidnapping twice" and instead evidenced its belief "that there was no other means of criminally prosecuting a parent who kidnapped a child, other than by means of the interference with child custody statute." Accordingly, Llorens insists that the legislature has not evidenced an intention that it sought to authorize two punishments for the same conduct and that the legislative history weighs strongly in favor of a determination that the offenses are the same.

Although portions of the bill analyses highlighted by Llorens refer to parental kidnapping, it is not entirely clear that the bill analysis was using the word kidnapping as it has been statutorily defined in the Penal Code or was making a definitive comment regarding whether conduct may be punished under both the kidnapping statute and interference statute. As discussed earlier, a person commits kidnapping if he "intentionally or knowingly abducts another person," and " '[a]bduct' means to restrain a person with intent to prevent his liberation by" "secreting or holding him in a place where he is not likely to be found" or by "using or threat-

ening to use deadly force." Tex. Penal Code §§ 20.01(2), .03(a). Accordingly, both the use of the word kidnapping in the bill analysis when discussing how "[a] child would not have to be taken out of the state by a parent" for an offense to have occurred when there is no similar out-of-state requirement in the kidnapping statute[3] as well as the focus on the violation and enforcement of court orders indicate that the bill analysis was limiting its discussion to the crime of interference with child custody and was not attempting to comment on the scope or applicability of the kidnapping statute. *See id.* § 25.03. Moreover, a reading of the bill analysis as simply using "kidnapping" as a shorthand reference to interference with child custody is further supported by the portions of the first bill analysis stating that it was not possible to convict a parent of "kidnapping" unless the parent takes his child out of the State because that statement is inconsistent with case law upholding convictions under the kidnapping statute of parents who kidnapped their children but never left the State. *See, e.g., Peinado v. State*, 2015 WL 4931492, at *2–3, *8, *19 (affirming kidnapping conviction of mother of child who took child from child's father in one city and moved child to another city in same state). That reading is further buttressed by portions of another bill analysis discussing the same statute. *See* House Research Org., Bill Analysis, Tex. H.B. 95, 80th Leg., R.S. (2007). That analysis indicates that the purpose of the proposed bill was to "clear up confusion among law enforcement officials about whether or not they can enforce temporary orders for child custody" and explained that the bill would clarify that a person commits the offense of interference with child custody if he "tak[es] or retain[s] [a] child" in violation of "a temporary order for child custody." *Id.*

For these reasons, we believe that this factor either weighs in favor of a determination that the legislature intended for the two offenses to be treated as the same for double-jeopardy purposes or is neutral regarding the issue.

*Imputed Elements*

In her final set of arguments, Llorens contends that "some of the elements that differ between" the two offenses "could be considered the same" under an imputed theory of liability. When making this argument, Llorens notes that the kidnapping statute contains an affirmative defense applying if "the abduction was not coupled with intent to use or to threaten to use deadly force," if "the actor was a relative of the person abducted," and if "the actor's sole intent was to assume lawful control of the victim." Tex. Penal Code § 20.03(b). In light of the language from the affirmative defense excusing culpability if an individual's intent was to assume lawful control over a victim, Llorens contends that in the absence of allegations that a parent used or threatened deadly force, *see id.* § 20.01(2) (defining " '[a]bduct' "), a parent could only kidnap his or her child if there was a court order prohibiting the parent

---

3. The kidnapping statute does have a geographical element that can apply depending on the age of the victim. As set out in the body of the opinion, a person commits the offense of kidnapping if he abducts another. *See* Tex. Penal Code § 20.03(a). The Penal Code defines " '[a]bduct' " as meaning "to restrain a person with intent to prevent his liberation" and further defines " '[r]estrain' " as meaning "to restrict a person's movements without consent." *Id.* § 20.01(1), (2). In addition, the Penal Code lists ways in which "[r]estraint is 'without consent,' " including in circumstances in which the victim is between 14 and 17 years old and in which a victim falling within that age bracket "is taken outside of the state and outside a 120–mile radius from the victim's residence" without the parent or guardian "acquiesc[ing] in the movement." *Id.* § 20.01(1)(B)(ii).

from taking custody of a child because parents have "the right to have physical possession" of their child unless, among other ways, there is "a court order affecting the rights and duties" "of a parent," *see* Tex. Fam. Code § 151.001(a)(1), (d)(1). Further, Llorens argues that the need for a court order is similar to the portion of the interference-with-child-custody statute explaining that a person commits an offense by taking or retaining a child knowing "that the person's taking or retention violates the express terms of a judgment or order." *See* Tex. Penal Code § 25.03(a)(1).

In addition, Llorens contends that "the mens rea requirement of the kidnapping statute can be imputed onto the requirements" of the two types of interference with child custody alleged in this case. Specifically, Llorens urges that "the kidnapping mens rea requirement of intent to prevent liberation by secreting or holding where not likely to be found ... will be met whenever a jury finds that a person took a child out of the U.S. with the intent to deprive a person entitled to custody or access of that custody or access." *See id.* §§ 20.01(2)(A), 25.03(a)(3). Similarly, Llorens contends that the kidnapping mens rea is the same, "under an imputed elements analysis," as taking or retaining a child in violation of a court order because by taking or retaining a child, the parent will also intend "to prevent the child's liberation." *Id.* §§ 20.01(2)(A), 25.03(a)(1).

As an initial matter, we note that "[t]he concept of imputing elements into an offense in order to determine if the offenses are the 'same offenses' for purposes of double jeopardy has not been widely explored in caselaw" and that few courts have "positively determined this factor." *See McCrary*, 327 S.W.3d at 177. In addition, although the court of criminal appeals has imputed culpable mental states, *see*

*Shelby*, 448 S.W.3d at 440; *Ervin v. State*, 991 S.W.2d 804, 815 (Tex. Crim. App. 1999), it is not entirely clear that the violation of a court order and knowledge of that violation could be similarly imputed to an alleged kidnapping offense, *cf. McCrary*, 327 S.W.3d at 177 (stating that imputation of differing degree of bodily injury was not logical under circumstances of case). Further, although we need not and do not decide the issue here, it is not entirely clear that Llorens correctly construed the affirmative defense listed in the kidnapping statute by urging that the language of the defense compelled a conclusion that a parent could only be convicted of kidnapping, in the absence of the use or threat of deadly force, if there is a pre-existing court order regarding the child. *See* Tex. Penal Code §§ 20.01(2), .03(b).

Regardless, unlike the situation in which courts have imputed culpable mental states to offenses that do not otherwise require proof of a culpable mental state, *see Shelby*, 448 S.W.3d at 440; *Ervin*, 991 S.W.2d at 815; *Stanley*, 470 S.W.3d at 670, the alleged offenses at issue here contain their own culpable mental states, *see* Tex. Penal Code §§ 20.03(a) (explaining that person commits kidnapping if "he intentionally or knowingly abducts another person"), 25.03(a) (providing that person commits offense of interference with child custody if he "takes or retains a child" "know[ing] that ... [it] violates" court order or "takes or retains a child ... outside the United States with the intent to deprive a person" of access to that child).

Even assuming for the sake of argument that the elements listed above could be imputed under the circumstances of this case, *cf. Stanley*, 470 S.W.3d at 670 (mentioning in section addressing imputed elements that examination "of the offenses as charged in the indictment shows that the alleged conduct for each offense in this

case was exactly the same"), we note that Llorens concedes that the list addresses only some of the elements that differ between the two offenses. For example, unlike for the interference-with-child-custody offense, the State was required to prove lack of consent in the kidnapping offense. *See* Tex. Penal Code § 20.01(1).

For these reasons, we conclude that this factor, at most, weighs slightly in favor of a determination that the legislature did not intend for the same conduct to be punished under both statutes.

In summary, only two of the factors identified by the court of criminal appeals potentially weigh in favor of finding a double-jeopardy violation. Given our resolution of the remainder of the factors, particularly our conclusion that the two offenses have different gravamen, and in light of the presumption that the two offenses are not the same for double-jeopardy purposes stemming from our earlier determination that the two offenses require proof of different facts, we must conclude that there is no double-jeopardy violation present on the face of the record in this case. *See Garrison v. State*, Nos. 02-04-00450-00451-CR, 2005 WL 1594258, at *6 (Tex. App.–Fort Worth July 7, 2005, pet. ref'd) (not designated for publication) (noting that defendant must show that error is present on face of record *and* that enforcement of usual rules of procedural default serves no legitimate purpose in order to present double-jeopardy claim for first time on appeal). Accordingly, we overrule Llorens's first issue on appeal.

### Court Costs

In her second issue on appeal, Llorens asserts that "there was no basis for some of the court costs imposed." The official bill of costs accompanying Llorens's conviction listed the following costs totaling $469: felony court costs $224.00, warrant-execution fee $200, summons-execution fee

$5, commitment fee $20, and release fee $20.

The payment of court costs is mandated by the legislature. *Houston v. State*, 410 S.W.3d 475, 477 (Tex. App.–Fort Worth 2013, no pet.); *see also* Tex. Code Crim. Proc. arts. 42.15(a) (applying to judgments that impose fines and requiring defendant to pay fine as well as "costs to the state"), .16 (requiring payment of costs when "punishment is any other than a fine"). However, the defendant may only be obligated to pay court costs that are statutorily authorized. *Johnson v. State*, 423 S.W.3d 385, 389 (Tex. Crim. App. 2014); *see also* Tex. Code Crim. Proc. art. 103.002 (providing that "[a]n officer may not impose a cost for a service not performed or for a service for which a cost is not expressly provided by law"). Because court costs do not need to be incorporated into a judgment by reference or orally pronounced, defendants may challenge the imposition of court costs for the first time on appeal. *Johnson*, 423 S.W.3d at 389, 391. When a defendant challenges the imposition of court costs, reviewing courts determine if there is a basis for the costs but do not determine if sufficient evidence was offered during the trial to support each cost. *Id.* at 390.

When presenting this issue on appeal, Llorens first asserts that the felony court costs should be reduced from $224 to $219. As support for this proposition, Llorens refers to various statutory provisions authorizing felony court costs and asserts that the total amount in fees authorized by those statutes is $219. *See* Tex. Loc. Gov't Code §§ 133.102(a)(1) (authorizing imposition of $133 as court cost "on conviction of a felony"), .105(a) (requiring, for most offenses, imposition of fee of $6 as court cost "to be used for court-related purposes for the support of the judiciary"), .107(a) (stating that, for most offenses, convicted per-

son shall pay "a fee of $2" as court cost "to be used to fund indigent defense representation"); Tex. Code Crim. Proc. arts. 102.0045(a) (obligating individuals convicted of most offenses to pay "a fee of $4" as court cost "to reimburse counties for cost of juror services"), .005(a) (requiring convicted person to pay "a fee of $40" "for the services of the clerk of the court"), (f) (stating that convicted person must pay "a fee of $25 for records management and preservation services"), .0169(a) (obligating convicted defendants to "pay a $4 county and district court technology fee as a cost of court"), .017(a) (mandating that "defendant convicted of felony offense ... pay a $5 security fee as a cost of court").

However, in addition to the costs that Llorens outlined above, section 51.851 of the Government Code authorizes the imposition of an electronic filing fee and provides that "[i]n addition to other court costs, a person shall pay $5 as a court cost on conviction of any criminal offense in a district court, county court, or statutory county court." Tex. Gov't Code § 51.851(d). Accordingly, there is a basis for the additional $5 cost.

Next, Llorens urges that the warrant-execution fee should be reduced from $200 to $150. When making this request, Llorens acknowledges that subarticle 102.011(a)(2) of the Code of Criminal Procedure requires that a defendant pay "$50 for executing or processing an issued arrest warrant, capias, or capias pro fine." Tex. Code Crim. Proc. art. 102.011(a)(2). However, Llorens notes that the bill of costs only lists the execution of one warrant and two capiases. Accordingly, Llorens contends that the fee should be reduced by $50. In its appellee's brief, the State agrees that "[t]he amount charged for warrant fees on the bills of costs should be reduced by $50.00" because "[t]he record reflects that" there was only "one arrest warrant and two capiases" that were processed.

Finally, Llorens argues that the commitment and release fees should be reduced from $20 each to $5 each. When presenting this argument on appeal, Llorens acknowledges that subarticle 102.011(a)(6) of the Code of Criminal Procedure authorizes the imposition of a fee of $5 "for commitment or release." *Id.* art. 102.011(a)(6); *see also Williams v. State*, 495 S.W.3d 583, 591 (Tex. App.–Houston [1st Dist.] 2016, pet. granted) (explaining that statute "refers to a defendant's commitment to and release from jail"). However, she asserts that she was only committed to jail once, that she was continuously jailed from October 2014 to March 2016, and that she was only released once when she was transferred from jail to prison after her sentence was assessed. In its appellee's brief, the State agrees that "the amount of [Llorens's] commitment and release fees should be reduced by $30.00" because the record shows that Llorens "was committed and released but a single time."

For the reasons previously given, we sustain the portions of Llorens's second issue challenging parts of the warrant-execution fee and the commitment and release fees and overrule the portion of the second issue pertaining to the imposition of felony court costs.

## CONCLUSION

Having overruled Llorens's first issue on appeal and the portion of Llorens's second issue regarding felony court costs but having sustained the portions of Llorens's second issue regarding the warrant-execution fee and the commitment and release fees, we modify the district court's judgment pertaining to Llorens's kidnapping conviction to reduce the warrant-execution fee to $150 and to reduce the commitment and release fees to $5 each and, as modified,

affirm that judgment of conviction as well as the district court's judgment of conviction for interference with child custody.

Affirmed in part; Modified and, as Modified, Affirmed in part