The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
December 24, 2025

**2025COA94**

**No. 22CA1977, *People v. Wilson* — Crimes — Violation of Custody Order or Order Relating to Parental Responsibilities — Unit of Prosecution; Constitutional Law — Fifth Amendment — Double Jeopardy — Multiplicity**

As a matter of first impression, a division of the court of appeals considers whether the unit of prosecution for violating a child custody order under section 18-3-304(2), C.R.S. 2025, is the number of custody orders violated or the number of children affected. Based on the plain language of the statute, the division concludes that the unit of prosecution is the number of children affected. The division further concludes that no evidentiary error occurred here and that sufficient evidence supports the violation of a child custody order and child abuse convictions. Accordingly, the judgment is affirmed. The case is remanded for the trial court to merge the separate knowing or reckless and negligent child abuse

convictions into a single conviction and to amend the mittimus accordingly.

Court of Appeals No. 22CA1977
Mesa County District Court No. 21CR982
Honorable Matthew D. Barrett, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Tiffany Jean Wilson,

Defendant-Appellant.

JUDGMENT AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE FREYRE
Pawar and Yun, JJ., concur

Announced December 24, 2025

Philip J. Weiser, Attorney General, Austin R. Johnston, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Emily Hessler, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Tiffany Jean Wilson, appeals her convictions on four counts of violation of a custody order, one count of child abuse (no injury, knowing or reckless), one count of child abuse (no injury, negligence), one count of resisting arrest, and one count of obstructing government operations.

¶ 2    Wilson raises three challenges on appeal.  She contends that (1) insufficient evidence supports her convictions for violating a child custody order and child abuse; (2) extrinsic bad character evidence was erroneously admitted; and (3) her four convictions for violation of a custody order are multiplicitous because the unit of prosecution under section 18-3-304(2), C.R.S. 2025, is the number of custody orders violated, not the number of children affected. Wilson also contends, and the People agree, that merging her negligent child abuse conviction into her knowing or reckless child abuse conviction is required.

¶ 3    Wilson's section 18-3-304(2) argument raises a novel issue of statutory interpretation.  Based on the statute's plain language, we conclude that the unit of prosecution for violating a child custody order is the number of children affected, not the number of custody orders violated.  Accordingly, we reject Wilson's argument and,

because we disagree with her evidentiary arguments, affirm the judgment. We remand the case for the trial court to merge Wilson's child abuse convictions into a single conviction and to amend the mittimus accordingly.

## I.    Background

¶ 4    In June 2021, Maggie Hellard, a social caseworker with the Mesa County Department of Human Services (MCDHS), received an emergency custody and pickup order (the Order) for Wilson's four children. Hellard and another MCDHS caseworker, Erica Sebring, along with Grand Junction Police Officers Kaelyn Dennis and Travis Wright, approached Wilson in the driveway of her then boyfriend's house. Wilson and her oldest child, J.W., were standing outside her car, while the remaining three children were inside her car.

¶ 5    Hellard identified herself as a caseworker with MCDHS, read the Order to Wilson, said that the children were required to come with her, and said that a shelter hearing would take place in two days. Hellard did not show Wilson the Order.

¶ 6    Initially, Wilson was calm and said she understood. After Hellard and Sebring repeated the Order, Wilson grew agitated and said that she was done "playing games" and that she would see

MCDHS in court. Wilson got in her car, instructed J.W. to get in the car, and began backing out of the driveway with the passenger side door open. Wilson then left with her children.

¶ 7     Approximately thirty minutes later, Hellard received a tip from B.P., a former foster parent of two of Wilson's children and a friend of Wilson, that Wilson was at her own house. When B.P. arrived at Wilson's house, she found Wilson in a back bedroom. Wilson was holding her eighteen-month-old son, C.S., while smoking marijuana. Wilson was very upset, threatened to "effing kill herself," and grabbed a pair of scissors. Wilson was "elevated" and crying, and she told B.P. that she was not going to lose her children. When Dennis and Wright knocked on the front door, Wilson began stabbing herself in the head with the scissors.

¶ 8     Shortly thereafter, J.W. let Dennis and Wright into Wilson's house and they entered the back bedroom. Wilson was still sitting on the bed with C.S. in her left arm and a pair of scissors in her right hand. B.P. was lying on the bed, trying to restrain Wilson's right arm. B.P. told the officers that Wilson had attempted to stab herself. Dennis jumped on the bed to retrieve the scissors. After a struggle, Wilson was arrested.

¶ 9     The People charged Wilson with four counts of violating a custody order, two counts of child abuse, resisting arrest, obstructing government operations, and reckless endangerment.  A jury acquitted her of reckless endangerment and convicted her of the remaining charges.  The court sentenced Wilson to forty-five days in jail and two years of probation.

## II.     Sufficiency

¶ 10     Wilson contends that insufficient evidence supports her convictions for violation of a custody order and child abuse.  We disagree.

### A.     Standard of Review and Applicable Law

¶ 11     "We review the record de novo to determine whether the evidence presented was sufficient in both quantity and quality to sustain a defendant's conviction."  *McCoy v. People*, 2019 CO 44, ¶ 63.  In doing so, we assess whether the evidence, viewed in the light most favorable to the prosecution, supports a reasonable conclusion that the defendant is guilty beyond a reasonable doubt. *People v. Tomaske*, 2022 COA 52, ¶ 17.  We will overturn the verdict only if, despite drawing every reasonable inference in favor of the prosecution, the record is unsubstantial and insufficient to support

4

a guilty verdict beyond a reasonable doubt. *Clark v. People*, 232 P.3d 1287, 1291-92 (Colo. 2010).

## B. Violation of a Child Custody Order

¶ 12    Under section 18-3-304(2),

> any parent or other person who violates an order of any district or juvenile court of this state, granting the custody of a child or parental responsibilities with respect to a child under the age of eighteen years to any person, agency, or institution, with the intent to deprive the lawful custodian or person with parental responsibilities of the custody or care of a child under the age of eighteen years

violates a custody order.

¶ 13    Wilson contends that the prosecution failed to prove that (1) she violated the Order; (2) she had the intent to deprive a lawful custodian of custody; and (3) the Order was issued by a district or juvenile court. We are not persuaded.

¶ 14    The evidence demonstrated that a judge ordered the children to be placed in MCDHS's temporary custody. Hellard testified that she knew Wilson from previous interactions as a caseworker. Body camera footage further showed that Hellard told Wilson that a judge "signed over custody"; Wilson said she knew what to do about the shelter hearing and was "not going to play your . . . charades

anymore"; Sebring told Wilson the children had to come with MCDHS and Wilson said "no, they are not"; and when Hellard reiterated that MCDHS had custody of the children by court order, Wilson replied that she was "not doing this with [MC]DHS anymore" and drove away.

¶ 15     Viewing this evidence in the light most favorable to the prosecution, a jury could reasonably conclude that Wilson violated the Order by leaving with the children after Hellard explained that it required the children to come with her.

¶ 16     We reject Wilson's argument that the prosecution did not prove that she violated the Order because the Order required law enforcement officers to take physical custody of the children before transferring them to MCDHS. The Order said law enforcement "shall accompany [MCDHS]" and law enforcement "may enter . . . retrieve . . . and deliver the children to the [MCDHS's] custody." *See People v. Garcia*, 2016 COA 124, ¶ 13 ("shall" is generally mandatory, whereas "may" is generally indicative of a grant of discretion or choice among alternatives). Moreover, it explicitly stated that MCDHS shall exercise custody, not that law enforcement shall exercise custody.

¶ 17    To the extent Wilson contends that a defendant may only violate section 18-3-304(2) by "taking" a child from a lawful custodian, we disagree.  When interpreting a statute, we focus on legislative intent.  *Cowen v. People*, 2018 CO 96, ¶ 11.  We may not add or subtract words from a statute.  *Turbyne v. People*, 151 P.3d 563, 567 (Colo. 2007).  Section 18-3-304(2) only requires "the intent to deprive," which can be committed by taking a child or by refusing to surrender a child.

¶ 18    The evidence was also sufficient for the jury to reasonably conclude that Wilson understood the Order and acted with the intent to deprive MCDHS of custody.  Insofar as Wilson argues that conflicting evidence shows she did not understand the Order because Hellard did not provide her with a copy or explain its contents or her rights and remedies, it was up to the jury to resolve such conflicts.  *See People v. Perez*, 2016 CO 12, ¶ 31 ("A court must not invade the province of the jury by second-guessing its conclusion when the record supports the jury's findings.").

¶ 19    Finally, we conclude the evidence was sufficient to support a finding that the Order was issued by a district or juvenile court.  Wilson asserts that the prosecution failed to present evidence that

the magistrate who issued the Order was properly appointed to issue temporary protective custody orders acting as a district or juvenile judge under sections 13-5-201(3) and 19-3-405(1), C.R.S. 2025. But the Order said "District Court, Mesa County, Colorado," provided the court's address, and was signed "By the Court." From this evidence, a rational jury could reasonably infer that the Order was issued by a Colorado district court. Again, to the extent the evidence could have supported a contrary conclusion, the issue was for the jury to decide. *Perez*, ¶ 31.

### C. Child Abuse

¶ 20     A person commits child abuse if she "permits a child to be unreasonably placed in a situation that poses a threat of injury to the child's life or health." § 18-6-401(1)(a), C.R.S. 2025.

¶ 21     Wilson argues that the prosecution failed to prove that she permitted C.S. to be unreasonably placed in a situation that posed a threat to his life or health and, to the extent C.S. was in danger, it was due to B.P. and the officers confronting her and wrestling with her while she was holding him. We disagree.

¶ 22     B.P. testified that Wilson held C.S. while smoking marijuana and stabbed herself in the head before B.P. or the police officers

8

physically engaged with her. Viewing this evidence in the light most favorable to the prosecution, we conclude it was sufficient for a reasonable jury to conclude that Wilson, not B.P. or the police officers, permitted C.S. to be unreasonably placed in a situation that posed a threat of injury to his life.

¶ 23    Wilson also argues that the prosecution failed to prove that she acted with any of the requisite mental states. Again, we disagree. Wilson was charged with two counts of child abuse: one committed knowingly or recklessly, and one committed with criminal negligence. A person acts knowingly when "[s]he is aware that h[er] conduct is practically certain to cause the result." § 18-1-501(6), C.R.S. 2025. Acting knowingly necessarily includes acting recklessly and acting with criminal negligence. *People v. Rigsby*, 2020 CO 74, ¶ 22.

¶ 24    As discussed, B.P. testified that Wilson stabbed herself in the head while holding C.S. The evidence also showed that Wilson continued to resist even when B.P. and the police officers began to wrestle with her to remove the scissors and C.S. This evidence is sufficient for a reasonable jury to conclude that Wilson was aware that her conduct was "practically certain" to place C.S. in a

situation that posed a threat of injury to his life.  *See People v. Robinson*, 226 P.3d 1145, 1154 (Colo. App. 2009) ("In assessing the sufficiency of the evidence, . . . a defendant's mental state may be inferred from his or her conduct and other evidence, including the circumstances surrounding the commission of the crime . . . .").

¶ 25    We therefore conclude that there was sufficient evidence to support Wilson's convictions.

## III.    CRE 404(b)

¶ 26    Wilson next contends that the trial court erroneously admitted extrinsic bad character evidence that her children had previously been placed in foster care.  We disagree.

¶ 27    We review the trial court's evidentiary rulings for an abuse of discretion.  *People v. Abad*, 2021 COA 6, ¶ 8.  A court abuses its discretion when it misapplies the law or when its ruling is manifestly arbitrary, unreasonable, or unfair.  *People v. Vanderpauye*, 2023 CO 42, ¶ 23.

¶ 28    CRE 404(b)(1) prohibits the admission of evidence of uncharged misconduct for the purpose of proving that a defendant acted in conformity with a character trait on a particular occasion.  It governs admissibility "when the trial court determines that

10

uncharged misconduct evidence supports an improper inference of the defendant's character." *Rojas v. People*, 2022 CO 8, ¶ 43. If extrinsic evidence does not suggest bad character, CRE 404(b) does not apply, and the evidence is admissible if it is relevant and its probative value is not substantially outweighed by the danger of unfair prejudice. *Id.* at ¶ 52; CRE 401-403.

¶ 29     Before trial, Wilson filed a motion in limine to preclude the introduction of "any statements or evidence alluding to prior [MC]DHS or child abuse cases." Specifically, she argued that her statement about killing herself and "not going through this again" while stabbing herself in the head was inadmissible because it alluded to a prior instance where she lost her children and could only be used for propensity purposes. The trial court ruled that Wilson's statement was irrelevant, unduly prejudicial, and not admissible at trial.

¶ 30     At trial, the prosecution introduced evidence that Wilson's children were previously in foster care. During opening and closing statements, it referenced the fact that B.P. fostered Wilson's children, and it also elicited testimony from B.P. and Hellard that B.P. had fostered two of Wilson's other children, M.J. and N.F.

11

¶ 31   Importantly, however, the prosecution did not introduce evidence that Wilson said she was "not going through this again." So despite Wilson's arguments, no evidence was admitted in violation of the trial court's pretrial ruling.

¶ 32   To the extent Wilson argues that other evidence showing her children were in foster care violated the trial court's pretrial ruling, we disagree.  B.P.'s and Hellard's testimony that M.J. was previously in foster care did not state or suggest that the foster placement resulted from Wilson's prior criminal conduct, prior instances of child abuse, or even MCDHS's involvement.  To the contrary, B.P. testified that she was Wilson's family friend and was trying to cultivate a good relationship with her.  Because this evidence did not suggest bad character, CRE 404(b) does not apply. *Rojas*, ¶ 52.  Evidence that Wilson had experience with the foster care system was further relevant because it rebutted Wilson's assertion that she did not understand or was confused by Hellard's explanation of the Order.  Given that there was no accompanying suggestion of bad character, we conclude the probative value of this evidence was not outweighed by the danger of unfair prejudice. Accordingly, we discern no error.

IV.    Unit of Prosecution for Violation of a Custody Order
Convictions

¶ 33    Wilson next contends that the unit of prosecution for violating

a custody order is per order, not per child, and asks us to vacate

three of her convictions.  As a matter of first impression, we

conclude that the unit of prosecution is per child affected.

A.    Standard of Review and Applicable Law

¶ 34    We review de novo a claim that a conviction violates a

defendant's constitutional protection against double jeopardy.

*People v. Arzabala*, 2012 COA 99, ¶ 19.

¶ 35    Multiplicity is the charging of the same offense in several

counts, culminating in multiple punishments.  Multiplicitous

convictions are prohibited because they violate the constitutional

prohibition against double jeopardy.  We analyze a multiplicity

claim in two steps.  *People v. Vigil*, 251 P.3d 442, 448 (Colo. App.

2010).  First, we examine the statute to determine the "unit of

prosecution." *People v. Bott*, 2020 CO 86, ¶ 9.  "The unit of

prosecution is the manner in which a criminal statute permits a

defendant's conduct to be divided into discrete acts for purposes of

13

prosecuting multiple offenses." *Woellhaf v. People*, 105 P.3d 209, 215 (Colo. 2005).

¶ 36 To determine the unit of prosecution, we look to the statute. *Arzabala*, ¶ 23. In construing a statute, we must discern and effectuate the intent of the legislature based primarily on the plain and ordinary meaning of the language. *Id.* We read the language at issue in the context of the statute as a whole and the context of the entire statutory scheme. *People v. Sexton*, 2012 COA 26, ¶ 16. If the statute is clear and unambiguous on its face, we look no further. *People v. Valenzuela*, 216 P.3d 588, 590 (Colo. 2009).

¶ 37 Second, we examine the "factual components of each prosecution and the evidence in support thereof." *Woellhaf*, 105 P.3d at 215 (citation omitted). At the second step, "we look to all of the evidence introduced at trial to determine whether the evidence was sufficient to support distinct and separate offenses." *People v. McMinn*, 2013 COA 94, ¶ 22.

¶ 38 In pertinent part, the violation of a custody order statute provides as follows:

> Except as otherwise provided in subsection (2.5) of this section, any parent or other person who violates an order of any district or juvenile

court of this state . . . with the intent to deprive the lawful custodian or person with parental responsibilities of the custody or care of a child under the age of eighteen years, commits a class 5 felony.

§ 18-3-304(2).

## B.  Analysis

¶ 39    Looking first to the words chosen by the legislature, we observe that section 18-3-304(2) links violation of a custody order to "a child," using broad, indefinite terms.  The statute provides that "any parent or other person who violates *an* order . . . granting the custody of *a* child . . . with the intent to deprive the lawful custodian or person with parental responsibilities of the custody or care of *a* child" violates a custody order.  § 18-3-304(2) (emphasis added).  The legislature did not use the definite article "the" but instead used the indefinite articles "an" and "a."  *Cf. Coffey v. Colo. Sch. of Mines*, 870 P.2d 608, 610 (Colo. App. 1993) (use of the definite article "the" particularizes the subject it precedes (citing *City of Ouray v. Olin*, 761 P.2d 784, 787 (Colo. 1988))); *see also Brooks v. Zabka*, 450 P.2d 653, 655 (Colo. 1969) (the definite article "the" "is a word of limitation as opposed to the indefinite or generalizing force of 'a' or 'an'").  We conclude this language is

15

unambiguous and suggests that the legislature did not intend to require a unique custody order for each individual child. Instead, its repeated reference to "a child" in defining violation of a custody order evinces an intent to criminalize violation of a custody order with respect to *each* child identified in the order.

¶ 40    The plain language of section 18-3-304 focuses on protecting the child, criminalizing the taking or enticing of any child from another's rightful custody, and creating an affirmative defense for doing so when it is reasonably believed necessary to protect the child from danger.[1] The statute's placement in article 3 of the Criminal Code, entitled "Offenses Against the Person," further shows that the intent of the statute is to protect each individual child. For such victim-based offenses "defined in terms of committing an act causing harm to another person," the unit of prosecution is defined by the impact of the defendant's actions, not

---

[1] In reaching this conclusion, we note that the Colorado Supreme Court has affirmed a defendant's conviction on two counts of violation of a custody order — one for each child involved. *See People v. Coyle*, 654 P.2d 815, 817 (Colo. 1982). While the legislature has since amended the violation of a custody order statute, it has not changed the plain language focusing on the child or otherwise evidenced disapproval of the supreme court's interpretation.

the defendant's actions themselves. *Magana v. People*, 2022 CO 25, ¶¶ 25-26 (quoting *People v. Espinoza*, 2020 CO 43, ¶ 13); *see also People v. Snider*, 2021 COA 19, ¶ 50 (by contrast, obstruction of a peace officer is a non-victim-based crime, and its unit of prosecution is defined in terms of discrete volitional acts of obstruction, not the number of officers involved).

¶ 41 Based on the statute's plain language and a reading of the statutory scheme as a whole, we therefore conclude that the unit of prosecution for violation of a custody order is the number of children affected.

¶ 42 The out-of-state authority on which Wilson relies is distinguishable.

¶ 43 In *Llorens v. State*, 520 S.W.3d 129, 139 (Tex. App. 2017) the Texas court determined that the unit of prosecution for Texas' interference with child custody statute is the order, not the child, because the focus of the statute is on the order itself and the rights of the person under the order who has legal control of the child rather than on the child themselves. Further, the court determined that the statutes placement in the criminal code under "Offenses

17

Against the Family" rather than "Offenses Against the Person" supported their conclusion. *Id.*

¶ 44 Likewise, in *State v. Hunter*, 117 P.3d 254, 263-65 (N.M. Ct. App. 2005), the court concluded that the relevant statute was ambiguous as to the unit of prosecution. We have concluded that the plain language of section 18-3-304 is unambiguous. And despite Wilson's attempt to distinguish the statute discussed in *People v. McCoy*, 12 Cal. Rptr. 2d 476, 478 (Ct. App. 1992) (upholding multiple punishments for multiple violations of statute prohibiting violation of child custody order), we conclude that the California statute at issue in that case is like section 18-3-304 in that it prohibits any person from violating a custody order with the intent to deprive another of the custody and care of "a child."

¶ 45 For these reasons, we conclude that the unit of prosecution for violating a child custody order is the number of children affected. We further conclude, at the second step of our multiplicity analysis, that Wilson's conduct constituted factually separate offenses because each charge had a different victim. *See People v. Harris*, 2016 COA 159, ¶ 56. We therefore reject Wilson's claim that vacatur is required.

## V. Merger

¶ 46    Finally, Wilson contends and the People concede that her convictions for knowing or reckless child abuse and negligent child abuse must merge. We agree.

¶ 47    "Whether convictions for different offenses merge is a question of law that we review de novo." *People v. Sims*, 2020 COA 78, ¶ 37 (citing *Page v. People*, 2017 CO 88, ¶ 6). "[I]f one offense is included in another offense, a defendant may not be convicted of both offenses." *Friend v. People*, 2018 CO 90, ¶ 32. An offense is a lesser included one if it "is established by proof of the same or less than all the facts required to establish the commission of the offense charged." § 18-1-408(5)(a), C.R.S. 2025.

¶ 48    Both of Wilson's child abuse charges were based on identical conduct — Wilson's stabbing herself in the head while holding C.S. Therefore, the criminal negligence charge was a lesser included offense of the knowing or reckless abuse charge. *Reyna-Abarca v. People*, 2017 CO 15, ¶ 64; *see Rigsby*, ¶¶ 21-22. We therefore remand the case for the trial court to merge Wilson's child abuse convictions and to amend the mittimus accordingly.

## VI. Disposition

¶ 49 The judgment is affirmed, and the case is remanded with directions.

JUDGE PAWAR and JUDGE YUN concur.